Unknown Heirs of Langworthy v. Baker, Adm'r.

THE UNKNOWN HEIRS OF ASAHEL LANGWORTHY, deceased, Plaintiffs in Error, v. JONATHAN H. BAKER, Administrator of Asahel Langworthy, deceased, Defendant in Error.

ERROR TO McDONOUGH COUNTY COURT.

Error will lie to the County Court.

Presumptions in favor of courts of limited jurisdiction may be indulged in particular cases.

Before the County Court could obtain jurisdiction to commit an estate to a public administrator, it should affirmatively appear, and be preserved of record, that there was not any relative or creditor within the State, to whom administration might be committed; and that the application was made by a party interested in the estate.

It will be presumed that a debt outstanding for twenty-seven years, has been paid, without any plea of the statute of limitations.

A creditor who does not prosecute his claim against an estate within a reasonable time, will be presumed to have relinquished it. It would seem that seven years was a reasonable time.

It is the duty of an administrator to interpose the presumptions and limitations of of law against claims.

THIS was a proceeding commenced in the probate court of McDonough county, and it appears from the record that on the 4th day of April, A. D. 1855, David P. Wells filed in the office of the clerk of the County Court of that county, proof of the death of Asahel Langworthy, and requested that letters of administration issue on his estate to the public administrator.

That said Langworthy died on the 24th day of September, A. D. 1834.

That on the said 4th day of April, 1855, letters of administration upon the estate of said Langworthy were duly granted to Jonathan H. Baker, public administrator of said county; that said Baker filed his bond and was duly qualified as such administrator.

That on the 18th day of June, 1855, said administrator filed in the county clerk's office of said McDonough county, a notice, in the words and figures following, to wit:

" ESTATE OF ASAHEL LANGWORTHY, DEC'D.

" Notice is hereby given, that I will attend before the McDonough County Court, at the June term thereof, to be holden on the 3rd Monday of said month, A D. 1855, for the purpose of settling and adjusting all claims against the estate of Asahel Langworthy, deceased, when and where all persons holding claims against the said deceased are notified to present the same for adjustment. All persons indebted to said estate are requested to make immediate payment.

J. H. BAKER, Pub. Adm'r,
and Adm'r of the Estate of A. Langworthy, dec'd."

Macomb, April 20, 1855.

To which notice there was attached a printer's certificate of publication.

That afterwards, on the 18th day of June, A. D. 1855, the said David P. Wells came into court and presented for allowance against said estate, a certain promissory note, which said promissory note, and the indorsements thereon, are in the words and figures following, to wit:

$618 28
989 24
————
$1,607 52

"*St. Albans,* 14*th October,* 1828.

Value rec'd, I promise to pay N. B. & H. Wells, or order, Six Hundred Eighteen Dollars and Twenty-Eight Cents, on demand, with interest. ASAHEL LANGWORTHY."

The following is the indorsement on said promissory note:

"ASAHEL LANGWORTHY,
Note 14th Oct., 1828,
$618.28.

" For value rec'd, I assign and transfer the within note to Truman Roberts, of the city of New York, without recourse. N. B. WELLS,
Surviving partner of N. B. & H. Wells."

And that at the same time, said David P. Wells caused to be filed in said court a certain account, founded upon the said promissory note, which said account is in the words and figures following, to wit:

"ESTATE OF ASAHEL LANGWORTHY,
To T. ROBERTS, Dr.

To his note for - - - - - - - - - - $618 28
" 26 years 8 months interest, - - - - - - - 989 24

Allow in favor of Truman Roberts, for use of J. L. Troyman, $1,607 52"

Which said claim was allowed by the court, and ordered to be paid.

And that on the 20th day of September, A. D. 1855, said administrator filed in said court a notice of " Petition for the sale of real estate," which said notice is in the words and figures following, to wit:

"STATE OF ILLINOIS, } ss. In the McDonough County Court,
McDonough County, } To the September Term, A. D. 1855.

J. H. BAKER, Administrator of the Estate of }
ASAHEL LANGWORTHY, dec'd, } Notice of Petition
*vs.* } for Sale of Real Estate.
THE UNKNOWN HEIRS OF A. LANGWORTHY, dec'd. }

Notice is hereby given, that I will, at the September term of the McDonough County Court, to be commenced on the third Monday in said month, petition the County Court in and for said county of McDonough and State of Illinois, for a decree to enable me to sell the following described lands, or so much thereof as may be necessary to pay the debts of the said A. Langworthy, deceased, viz: :

Unknown Heirs of Langworthy *v.* Baker, Adm'r.

North-east 13, ten north, range 4 east, in Knox county.
North-east 34, ten north, range 4 east, in Knox county.
South-east 29, three north, range 4 west, in Schuyler county.
South-west 10, twelve north, range 8 east, in Marshall county.
South-east 10, twelve north, range 7 east, in Stark county.
South-west 21, seven north, range 2 west, in McDonough county.
When and where all persons interested in said real estate are requested to show cause why it should not be sold for the purposes aforesaid.

J. H. BAKER,
*July* 20, 1855.–6w.      Adm'r of the estate of Asahel Langworthy, dec'd."

The petition was filed September 20th, 1855, and sets forth that Langworthy was a non-resident, and has no personal property. That he died seized in fee of the real estate described in the foregoing notice. Petition does not show whether said Langworthy left any widow or heirs, or that if he left any heirs, whether they were known or unknown. Petition dated September 18th, 1855. That on said 20th day of September, 1855, Damon G. Tunnicliffe, Esq., was duly appointed guardian *ad litem* for the *unknown minor heirs* of said Asahel Langworthy, deceased. And that said guardian *ad litem* filed his answer in said court, in the words following, to wit:

" D. G. Tunnicliffe, guardian *ad litem* for the *minor heirs* of Asahel Langworthy, deceased, answering, says, that he has no knowledge, information or belief as to the matters and things in complainant's petition contained, and requires proof thereof."

On the 20th of September, 1855, the court caused to be entered of record in said cause a decree of sale of said lands.

Decree recites that there is no personal property, and that the estate of said Langworthy was indebted in the sum of $1,607.52. That said Langworthy died seized in fee of the real estate mentioned in said application for sale. That said administrator proceed to make sale of said lands for the payment of said debt. That said sale be made at the door of the court house in Macomb, at public vendue, on a credit of six months; and that said administrator take bond with good security, together with mortgage on the premises, to secure the payment of the purchase money. That said administrator give " public notice of the time, place and terms of said sale, together with a description of the premises, by putting up notices thereof in at least four of the most public places in the county of McDonough, and by causing a similar notice to be published in the McDonough Democrat for six weeks successively before the day fixed for said sale." And that said administrator report his proceedings to the next December term of said court.

That on the 19th of August, 1859, said administrator filed a report of his acts under said decree.

That on the 13th day of November, 1855, he made sale of said real estate to David P. Wells, for the sum of $270.

Report does not show that he gave the required notice; nor does it show that he took bond with security and mortgage on said lands sold, as he was required to do by said decree.

That on said 19th day of August, 1859, the doings of said administrator, under said decree, were confirmed by the probate court of McDonough county, aforesaid.

Plaintiffs assign for error that—

The court had no jurisdiction of the subject matter, or any right to render the order or decree.

The lien attempted to be enforced had been lost by *laches*.

The statute of limitations had run against the claim allowed by the probate court against the estate.

The whole proceedings are fraudulent on their face, and therefore *void*.

There is no affidavit or other evidence to show that the heirs were unknown.

There was no legal or sufficient notice to the creditors to present their claims.

There was no legal or sufficient notice of the application to sell said real estate.

Letters of administration, where there is only real estate, can issue only to the public administrator.

No sufficient notice of sale was given.

The order of sale is not set forth in the deed.

H. M. &. J. J. WEAD, for Plaintiffs in Error.

W. HERNDON, for Defendant in Error.

BREESE, J. A preliminary question is raised here as to the power of this court to entertain this writ of error, it having been sued out to the County Court. It is contended that no appeal or writ of error lies in such case, either by the common law or by statute. By the common law, an appeal did not lie from one court to any other in any case. That is a statutory right. A writ of error is a writ of right by the common law, and lies in all cases, civil and criminal, except capital cases, but can, of course, be regulated by statute. It is admitted that a writ of error can be prosecuted to the Circuit Court to bring up its proceedings for review in the Supreme Court. That is expressly provided for by statute, and without the statute it could be prosecuted as a writ of right belonging to all persons, unless expressly inhibited by statute.

Now it is expressly provided by section 13, of the act of 1849, establishing County Courts, that the County Court shall have concurrent jurisdiction with the Circuit Court, in hearing

and determining all applications for the sale of real estate of deceased persons, for the payment of the debts of said decedents, and may make all orders, and render all judgments on such applications that the Circuit Court might or could make or render in similar cases; and the orders and judgments of said court shall have the same force, power and effect as the orders and judgments of the Circuit Court in like cases; and final process may issue as from the Circuit Court. (Scates' Comp. 309.)

By section 24, of the same act, (ib. 311) it is provided that in all cases, where concurrent jurisdiction with the Circuit Court is given, the rules of proceeding and practice shall be the same.

By section 7, chapter 29, it is enacted, that the Supreme Court shall exercise appellate jurisdiction only, (except as is hereinafter excepted,) and shall have final and conclusive jurisdiction of all matters of appeal, error or complaints from the judgments or decrees of any of the Circuit Courts of this State, and from such other inferior courts as may hereafter be established by law, in all matters of law and equity. (Ib. 616.)

This act was passed March 3rd, 1845. The County Court was established by the act of 1849, and concurrent jurisdiction with the Circuit Court given to it in applications for the sale of real estate to pay debts. Its orders and judgments are made final and conclusive, and no appeal allowed to any court. The establishment of this County Court, giving it concurrent jurisdiction with the Circuit Court, makes its proceedings subject to review in the same manner as proceedings in the Circuit Court could be reviewed, in like applications.

By section 109, statute of Wills, it is provided that any person or persons claiming to be aggrieved by any judgment, decree or order for the sale of any such real estate as aforesaid, may appeal from the same to the Supreme Court of this State. (Ib. 1210.) The appeal here allowed is cumulative merely, the right to a writ of error existing at common law. The County Court then having as full and complete jurisdiction in such cases as the Circuit Court, and no appeal being allowed from the final order, to the Circuit Court, it would follow necessarily, to prevent a failure of justice, that error should lie to this court. If it was not so, the real estate of decedents would be at the mercy of the County Court.

This point being disposed of, we will now examine the objections urged to the proceedings.

It is urged that the court had no jurisdiction of the subject matter, or any right to render the decree or order.

If this objection be well taken, there is an end of the case, and all the proceedings must be declared void.

So far as the power of the court is involved, there is no ques-

tion made, but only of its exercise in this particular case. It is a court of limited though not of inferior jurisdiction, so to speak, and presumptions in favor of their jurisdiction in a particular case may be indulged. The record need not show the existence of all the facts from which the jurisdiction appears. But those facts without which jurisdiction could not be entertained in the particular case, should appear upon the record. The exercise of its jurisdiction was first invoked for the appointment of an administrator, on the allegation that Asahel Langworthy, of Franklin county, Vermont, died in 1834; that there was property in this State belonging to the estate of the deceased not administered upon, and that there are debts against the estate now due and unpaid, and that he died intestate and insolvent. On these suggestions and representations, proof of the death only having been made, the defendant, by being the public administrator of McDonough county, was appointed administrator on the estate.

The statute of Wills, sec. 58, provides, where any person shall die seized or possessed of any real estate within this State, or having any right or interest therein, and shall have *no relative* or creditor within this State, or if there be any, who will not administer upon such deceased person's estate, it shall be the duty of the judge of probate, upon the application of any person interested therein, to commit the administration of such estate to the public administrator of the proper county, etc. (Scates' Comp. 1192.)

We think, before this court could get jurisdiction of this case to act, it should have affirmatively appeared to the court, that there was no relative within the State, or creditor, to whom administration might be committed. It should further have affirmatively appeared, that the application for the appointment of an administrator on the estate, was made by a party interested in the estate. Neither of these facts, and they are fundamental facts, are shown, and the question arises, must this court presume they did exist, for it is a rule that intendments as liberal will be indulged in its favor, as would be to the proceedings of the Circuit Court. *Propst* v. *Meadow*, 13 Ill. R. 169. But this requirement of the statute goes to the very origin of the proceedings. It is the existence of these facts which awakens the power of the court—which calls it into action. They are fundamental facts, and although the court had cognizance of the general subject, it not appearing by the record that the facts were such as to give the court jurisdiction in the particular case, we are not authorized to presume their existence. The record purports to show all the facts on which the court assumed to act, and we cannot, therefore, intend other and indispensable facts

existed. Had the court found the fact to be, that there was no relative in this State, and that the party making the application for the appointment of an administrator, was interested in the estate, we would presume there was evidence of the facts, but not being found in the record, we cannot presume they existed. *Cotes et al.* v. *Haskins*, 9 Mass. 542.

In *Ford* v. *Walsworth*, 15 Wendell, 450, the court held that, as the proceedings of the surrogate did not show that an account of the personal estate and of the debts of the intestate was presented, it was a fatal defect, and therefore it did not appear he had jurisdiction in the matter.

We apprehend, however, if these accounts had been presented to the surrogate, his adjudication that the personal estate was not sufficient to pay them, followed by an order of sale of his real estate, would be conclusive in any collateral proceeding, but it could be examined on appeal, or by writ of error.

The doctrine of presumptions, to sustain jurisdiction, arises when the jurisdiction is questioned in some collateral proceedings. This proceeding to sell the land, which we are considering, following, as it did, immediately upon the heels of the appointment of the administrators, and brought before us in the same record, cannot be regarded as collateral, but as part and parcel, and the immediate result of such appointment. If then the record does not show that the facts existed, which could call into action the jurisdictional power of the court, the act of appointment of the administrator must be void. When the question is only as to the manner of exercising jurisdiction on a subject of which the court had jurisdiction, then, if the judge mistakes, the error can be corrected by appeal or writ of error. But when the question is, whether the court has jurisdiction of the particular subject or not, the judge must decide it at his peril. If he errs by assuming a jurisdiction which does not belong to him, his acts are void. We think, on the facts presented by the record, the county court had no jurisdiction of the subject matter, and his proceedings are consequently *coram non judice* and void.

The county court having no jurisdiction to appoint this administrator, the subsequent order of sale of the land, and the sale under the order by him, are necessarily void. *Holyoke* v. *Haskins*, 5 Pick. 25.

That an illegal grant of administration may be attacked collaterally also, see *Emboy* v. *Millar*, 1 A. K. Marshall, 304.

In *Griffiths* v. *Frazier*, 8 Cranch, 9 to 30, it was held, to give jurisdiction to the ordinary, a case in which, by law, letters of administration may issue, must be brought before him. We are clearly of opinion such a case had not been presented and

is not found in this case, for the reasons we have given. But, if the court had jurisdiction to appoint the administrator, then the question arises on this record, was the order of sale properly granted, and from which this writ of error is prosecuted ?

The debt, to pay which these lands were ordered to be sold, was created in 1828, and was originally for the sum of six hundred and eighteen dollars, twenty cents. It was a promissory note, payable *on demand*, and the court allowed interest for twenty-seven years, amounting to nine hundred and eighty-nine dollars, twenty-four cents, making the total allowance sixteen hundred and seven dollars, fifty-two cents. We think these lands, from lapse of time, were not liable for this debt. The lien had been lost by gross laches, and time, more than sufficient to bar a right of entry, had elapsed. Every legal presumption existed that the debt had been paid, without any plea of the statute of limitations. The production of a demand so stale should, in all cases, start this presumption, leaving it to the party claiming to rebut it by proof of some facts, rendering a demand or suit impossible at an earlier period. In an ordinary action at law, on such a note, the plea of payment would be sustained by force of this presumption.

As to the laches, we have said, in *Mc Coy* v. *Morrow*, 18 Ill. R. 519, that a creditor will be considered to have waived his lien upon the property of an intestate, if he does not pursue his remedy in a reasonable time, and although there is not an express statute of limitations within which such a lien may be enforced, it would seem by analogy to the lien of judgments and the limitations for entry upon, and recovery of lands, that seven years from the death of an intestate should bar such liens. The court further say, that it is the duty of administrators to interpose the presumptions and positive limitations of law against claims presented for allowance.

The court further say, the creditor, under our law, has ample means of compelling administration without delay, and through administration, subjecting the debtor's estate, real and personal, to the payment of the debts against the estate. If he fails to do so within a reasonable time, he will be held to have waived his lien against property demanded, and the grantee of the heir will take the title discharged of the lien.

As in that case, so in this ; it is not necessary to decide what shall be a reasonable time for that purpose, for here the delay is twenty-seven years, leaving no room either from adjudged cases, or the analogies of our law, for question.

To the same effect is *Ricord* v. *Williams*, 7 Wheaton, 60.

As well argued by counsel here, " If greater power is to be given to liens of this character than to those that are created by

the act of the party in his lifetime, or by the judgment of a court, then there must be an end to every feeling of security in the perfection of land titles. No man can feel assured that his children may not be disseized of their inheritance, a genera tion after the debtor himself has passed away."

The same point has been considered and determined, in consonance with the views of the court in *Mc Coy* v. *Morrow* and *Ricord* v. *Williams*, in the following cases: *Gore* v. *Brazier*, 3 Mass. 541; *Wyman* v. *Brigden*, 4 ib. 155; *Sumner* v. *Child*, 2 Conn. 615.

The order to sell the land to pay this debt should not have been allowed, and the heir-at-law can contest it here. We might well advert in general terms to prominent facts in the case, which leave the strongest possible impression that the whole proceeding was void, as having been contrived of fraud to swallow up a large estate on a debt which the law presumes was paid. In the first place, the old note is assigned by the surviving payee, N. B. Wells, without recourse, to one Roberts. One D. P. Wells filed the claim in court, and N. B. Wells made affidavit of the death of Langworthy, and D. P. Wells enters himself as security on the bond of the administrator. The administrator interposes no defense to a claim he knew he could successfully defend, obtains the order to sell the land, and six quarter sections, in all nine hundred and sixty acres, are sold to D. P. Wells for the trifling sum of two hundred and seventy dollars. There is no proof of the actual value of the lands before us, but from our general knowledge of the counties in which they are located, we feel well satisfied that they would average in value at least ten dollars per acre. Thus by the contrivance of these parties, a valuable inheritance, in justice and right belonging to the plaintiff in error here, the only child and heir-at-law of the deceased Langworthy, for the merest trifle, is wrested from her, if the proceedings be valid. There is evidence before us, on the motion to dismiss this writ of error, that she has been residing in this State, in a county not very distant from the scene of these machinations, more than ten years, and without any notice, except such notice as may be found in a newspaper published in an osbcure village, and that paper of very limited circulation, that any proceedings were pending, or been had against the lands until they were sold.

This would seem to give force to another objection that is raised here, that there was no affidavit made that there were unknown heirs, before the publication was made.

We can consider the case in no other light than as a concocted fraud—fraudulent in its inception and in its consummation, and

we would be remiss in our duty did we not declare all the proceedings void. The decree ordering the sale is set aside.

WALKER, J. I concur in the conclusion arrived at in this case.

*Decree set aside.*