J. CHARLES HAINES

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 20, 1880.*

1. WRIT OF ERROR—*when it lies to inferior courts.* At common law a writ of error lies, as a matter of right, in *all cases*, either civil or criminal, except in treason and felony, and the doctrine is well recognized that whenever a new jurisdiction is erected by act of parliament, and the court or judge that exercises this jurisdiction acts as a court of record according to the course of the common law, a writ of error lies on their judgments; but if they act in a summary way, or in a new course different from the common law, a writ of error will not lie, but a *certiorari*. And such is the doctrine of this State, except so far as it has been modified by statutory or constitutional enactments.

2. SAME—*when it lies in this State.* A writ of error lies in this State from either this or the Appellate Courts to all inferior courts of record, for the purpose of reviewing their final determinations in all cases involving property

11—97 ILL.

rights or personal liberty, where no appeal is given from such inferior courts of record to some other intermediate court or to this court. This right exists independently of any statutory or constitutional provisions, by force of the common law, in all cases in which the jurisdiction of such inferior courts is exercised according to the course of the common law.

3. SAME—*lies in cases of contempt of court.* There being no statutory provision authorizing an appeal to the circuit court from an order of the probate court committing a party for an alleged contempt in the neglect of an administrator to make distribution of the estate in pursuance of an order of the court, and it being a final determination of that court in a criminal proceeding directly affecting personal liberty, it follows that a writ of error lies from this court to review the decision and action of the probate court.

4. CONTEMPT—*power of probate court to commit administrator for failing to pay over money.* Before the probate court is warranted in making a commitment in any case under sec. 114 of ch. 3, Rev. Stat., it must appear, among other things, that the administrator has failed or refused to pay over the moneys in his hands to the person or persons entitled thereto, in pursuance of the order of the court, within thirty days after *demand made* for such money. The *demand* is one of the necessary elements that enters into the offence, and it can not be dispensed with, or even waived by the administrator.

WRIT OF ERROR to the Probate Court of Cook county; the Hon. JOSHUA C. KNICKERBOCKER, Judge, presiding.

This was a proceeding by the People of the State of Illinois, in the probate court of Cook county, against plaintiff in error, for an alleged contempt.

It appears that on the 8th day of December, 1879, plaintiff in error, being in arrears as administrator with the heirs at law of J. H. Schulenberg, in the sum of $651.21, entered into the following stipulation:

"STATE OF ILLINOIS, ⎰ *ss.*
   County of Cook. ⎱

   *Probate Court of Cook County.*

"In the matter of the estate of John H. Schulenberg, deceased:

"It is hereby stipulated that the account on file and approved, in said estate, on August 18, 1879, showing a balance of $651.20 in the hands of said administrator of said estate,

stand for and in lieu of a final account, and that an order be entered directing said administrator to pay said balance so found in his hands, less the costs of final settlement, to the several parties entitled thereto, within the time provided by statute, thirty days from entry of order, and that no further demand be required by said administrator.

December 8, 1879.

J. CHARLES HAINES, Admr. etc.

By C. C. Kohlsaat, his Attorney.

ADOLPH MOSES, Att'y for Heirs.

J. CHARLES HAINES, Admr. etc."

Upon putting this stipulation on file the probate court entered of record an order "that the account of said administrator, approved by the court on the 18th day of August, 1879, stand as and for the final account of said administrator with said estate; that said administrator make distribution of the balance in his hands belonging to said estate, to-wit, the sum of $651.20, among the heirs-at-law of said decedent, within thirty days from this date, and that upon filing herein the receipts of said heirs-at-law for their respective shares of said balance, the said administrator shall be discharged."

On the 13th of January following, the probate court, after reciting at length the foregoing stipulation and order of the 8th of December, and also reciting that it appeared from testimony in open court that said last mentioned order had not been complied with by the administrator, entered another order, directing "that an attachment issue commanding the sheriff of Cook county to arrest J. Charles Haines, administrator, and bring him before the court forthwith, to answer the People of the State of Illinois for a contempt of court, in failing and refusing to comply with the requirements of said order of court." In pursuance of this order the following writ of attachment was issued on the same day, which, by agreement of parties, is to be considered a part of the record:

"We command you to take J. Charles Haines, administrator of the estate of John H. Schulenberg, deceased, and him

safely keep, so that you have his body forthwith before the probate court of Cook county, at a term now holden at the probate court room, 77 Clark street, in the city of Chicago, to answer the People of the State of Illinois for a contempt of court in not complying with an order of said court made and entered on the 8th day of December, A. D. 1879, requiring him, as the administrator of the estate of John H. Schulenberg, deceased, to distribute the balance found in his hands within thirty days from demand of distributees. And have you then and there this writ. Dated January 13, 1880."

On the same day Haines was arrested under this attachment, and appeared in open court, in custody of the sheriff, in answer thereto. The cause was continued until the following day, when the court, without any further judicial inquiry, made the following order:

"Ordered by the court, that the said J. Charles Haines be committed to the common jail of Cook county, Illinois, until he shall comply with the requirements of an order made and entered of record, December 8, A. D. 1879, or until the further order of the court."

Upon the entry of this order plaintiff in error prayed an appeal to the circuit court of Cook county, which the court disallowed, on the alleged ground that the law did not provide for an appeal in such case.

Thereupon the administrator sued out this writ of error, and has assigned various errors upon the record.

Mr. E. M. HAINES, for the plaintiff in error:

The right of appeal in this case clearly existed. Section 11 of the Probate Court act, Laws 1877, p. 79.

Conceding the proceeding to be one for contempt of court, the right of appeal exists. In other words, the right of review by a superior tribunal exists. *Blake* v. *The People,* 80 Ill. 11; *Callaghan* v. *Callaghan,* 62 id. 552; *Dinet* v. *The People,* 73 id. 183; *Storey* v. *The People,* 79 id. 45.

Where an appeal is not given by statute, or where the party is deprived of an appeal, as in this case, by the refusal of the judge to fix the conditions of his bond, and approve his sureties, a writ of error lies. *Peak* v. *The People,* 76 Ill. 289; *Hall* v. *Thode,* 75 id. 173; *Unknown Heirs, etc.* v. *Baker,* 23 id. 487; *Schlattweiler* v. *St. Clair Co.* 63 id. 449; *French* v. *The People,* 77 id. 531.

A writ of error lies from the county court, hence from the probate court in the like class of cases. *Hall* v. *Thode,* 75 Ill. 173.

At common law the only mode of removing a cause from an inferior court of record to a superior court for review, was by writ of error, and it was a writ of right, except in capital cases. *Bowers* v. *Green,* 1 Scam. 42; *McClay et al.* v. *Norris,* 4 Gilm. 370.

The right to appeal, or sue out a writ of error, is a constitutional right, and must be allowed when claimed. *Wallace* v. *The People,* 63 Ill. 449; Const. 1870, art. 6, sec. 8.

The probate court of Cook county, like all other courts of limited jurisdiction, possesses no powers beyond those expressly granted. *Field* v. *The People,* 2 Scam. 49; *School Inspectors* v. *Grove,* 20 Ill. 525; *Dowling* v. *Stewart,* 3 Scam. 192; *Wells* v. *Mason et al.* 4 id. 84.

The alleged offence in this case is neither a contempt of court at common law, nor is it made so by statute. It is true, power is given to commit delinquent executors and administrators in certain cases. Rev. Stat. ch. 3, sec. 114.

The section of the statute just cited does not authorize an attachment of the delinquent until the expiration of thirty days *after demand* for such moneys or dividends, which demand can not be made until after the time fixed for payment by the order of the court. *Johnson* v. *Von Kettler,* 66 Ill. 68.

In criminal proceedings a demand required by statute can not be waived. *Wright* v. *The People,* 61 Ill. 382; *Clark*

v. *The People,* Breese, 266 ; *Stuart* v. *The People,* 3 Scam. 395 ; *The People ex rel.* v. *Neill,* 74 Ill. 68.

The court can not commit, in any event, unless it appears that the alleged non-compliance was willful, and this the order of commitment must show.   *O'Callaghan* v. *O'Callaghan,* 69 Ill. 552 ; *Dinet* v. *The People,* 73 id. 183.

Mr. ADOLPH MOSES, for the People :

An appeal being allowed and regulated by sec. 11 of the Probate act of 1877, no writ of error will lie from this court. On the same point counsel referred to *Peak* v. *The People,* 76 Ill. 289 ; *Hobson* v. *Paine,* 40 id. 25 ; *Frans* v. *The People,* 59 id. 427 ; *The People* v. *Huntoon,* 71 id. 536 ; *Stuart* v. *The People,* 3 Scam. 395.

The order of the probate court is not final, but interlocutory.   *State ex rel. etc.* v. *Judge of Parish Court,* 21 La. 116 ; Dayton on Surrogates, 37 ; *Ex parte Smith,* 53 Cal. 207 ; Gary's Prob. Pr. 223-230.

By the stipulation filed, the administrator first *waived* any further demand, then promised to make distribution within thirty days, and stipulated that the court might enter such order.

The power to enforce, by attachment, decrees for the payment of money, against executors, etc., is now authoritatively established.   *Seaman* v. *Duryea,* 1 Kern. 324 ; *Ex parte Smith,* 53 Cal. 207.

Mr. JUSTICE MULKEY delivered the opinion of the Court :

We are confronted, at the threshold of this case, with the objection that a writ of error does not lie in a case of this character.   If the objection be well taken, it is certainly fatal to this proceeding, and the only order that can be properly entered by this court is one dismissing the writ.

By the common law of England a writ of error is grantable *ex debito justitiæ* in all cases, either civil or criminal, except in treason and felony, and the doctrine is well recognized

that whenever a new jurisdiction is erected by act of parliament, and the court or judge that exercises this jurisdiction acts as a court of record according to the course of the common law, a writ of error lies on their judgments; but if they act in a summary way, or in a new course different from the common law, a writ of error will not lie, but a *certiorari.* And such is the doctrine of this State, except so far as it has been modified by statutory or constitutional enactments.

At an early period in the judicial history of this State the common law doctrine on this subject was fully recognized.

Under the constitution of 1818, the whole subject was left substantially within the control of the legislature. Section 2 of article 4 of that constitution, which contains the only provision on the subject, is as follows:

" The Supreme Court shall be holden at the seat of government, *and shall have an appellate jurisdiction only,* except in cases relating to the revenue, in cases of *mandamus,* and in such cases of impeachment as may be required to be tried before it."

Under this constitution the legislature, in January, 1827, passed an act declaring "that appeals from the circuit court to the Supreme Court shall be allowed in all cases where the judgment or decree appealed from be final, and shall amount, exclusive of costs, to the sum of $20, or relate to a franchise or freehold."

In *Clark* v. *Ross,* Beecher's Breese, 334, this court, in giving a construction to that act, held that a writ of error would not lie where the judgment of the circuit court, exclusive of costs, is less than $20. But the decision in that case was not satisfactory to the bar, and was expressly overruled in *Bowers* v. *Green,* 1 Scam. 42.

In the latter case the writ was sustained under the same statute, although the amount in controversy was only $5, and the court, in the course of its judgment, lay down the general doctrine above stated, in these terms:

"The old and salutary rule that a writ of error is a writ of right, and can not be denied, except in capital cases, ought not to be abolished by implication and construction, and particularly where it is evident the legislature could not have contemplated its repeal."

In *Stuart* v. *The People*, 3 Scam. 395, plaintiff in error had been fined by the circuit court of Cook county for an alleged contempt, and upon the removal of the cause to this court, among other things, it was objected that the writ would not lie in such a case, but the objection did not prevail, and this court, in maintaining the writ, among other things, said: "Perilous indeed would be the condition of the citizen if he had not the privilege in such case to have it reviewed by another tribunal, and defective would be our jurisprudence if it afforded no means of relief. It is declared by our statute, *in conformity* with the common law principle, that in all criminal cases not capital the writ of error is a writ of right, and must issue of course. The proceeding for contempt is in the nature of a criminal proceeding, and has. been so adjudged in the case of *Clark* v. *The People*, Breese, 266."

The provision of the statute referred to by the court, in the case just cited, as being in conformity with the common law principle that the writ is one of right, and must issue of course, is found in the act of July 1,·1829, entitled "An act regulating the Supreme and Circuit Courts," and is in these words:

"The said Supreme Court shall exercise appellate jurisdiction only, (except as hereinafter excepted,) and shall have final and exclusive jurisdiction of all matters of appeal, error, or complaints, from the judgments or decrees of any of the circuit courts of this State, and from such other inferior courts as may hereafter be established by law, in all matters of law and equity wherein the rules of law or principles of equity appear from the files, records, or exhibits of any such court to have been erroneously adjudged and determined. And the said Supreme Court is hereby empowered and authorized

and enabled to take cognizance of all such causes as shall be brought before them in manner aforesaid, and shall be vested with all the power and authority necessary for carrying into complete execution all their judgments and decrees in the matters aforesaid, according to the laws, customs and usages of this State, and according to the rules and principles of the common law, and their judgments, decrees and determinations shall be final and conclusive on all the parties concerned."

These provisions of the act of 1829, in their application to proceedings conducted according to the course of the common law, are but declaratory of the common law, so far as writs of error are concerned.

In *McClay, Admr. et al.* v. *Norris,* 4 Gilm. 370, where it was objected the writ did not lie at the suit of an infant, it was said: "Our opinion of the right of any person, whether infant or adult, to prosecute a writ of error in this court, is founded upon the fact that it is a writ of right, and lies in all cases, unless prohibited by some statute or inflexible rule of law."

The court also bases its opinion upon the act of July 1, 1829, above referred to, and, in speaking of the act in question, it said: "The statute is broad and comprehensive in its terms, and seems designed to embrace every case in which an erroneous decree or judgment may have been rendered in the circuit court." This act was continued in the revisions of 1833 and 1845, and remained in force until after the present constitution went into effect.

This act not only extended to the judgments and decrees of the circuit courts, properly so called, but, in the language of the act, to their *determinations* in all cases where the error complained of appeared of record, and it was so considered in *McClay et al.* v. *Norris, supra.*

In *Unknown Heirs of Langworthy* v. *Baker, Admr.,* 23 Ill. 484, which was a proceeding in the county court to sell real estate, the point was made that the right of an appeal or to

prosecute a writ of error in such a case was given neither by the statute nor common law. But the court overruled the objection, holding the writ of error properly sued out, and in reply to the point made, said : " It is contended that no appeal or writ of error lies in such case, either by the common law or the statute. By the common law an appeal did not lie from one court to any other in any case. That is a statutory right. A writ of error is a writ of right by the common law, and lies in all cases, civil and criminal, except capital cases, but can, of course, be regulated by statute. It is admitted that a writ of error can be prosecuted to the circuit court to bring up its proceedings for review in the Supreme Court. That is expressly provided for by statute, and without the statute it could be prosecuted as a writ of right belonging to all persons, unless expressly inhibited by statute." The court then refers to the provisions of the act of 1849, establishing county courts, which give the county court concurrent jurisdiction with the circuit courts in that class of cases, and which declare that, in such cases, the proceeding and practice shall be the same as in the circuit courts, and reaches the conclusion that the proceedings of the county court in cases of that character are, by reason of the provisions referred to, subject to review in this court in the same manner as like proceedings in the circuit court. The court then proceeds to say: "By section 109, Statute of Wills, it is provided that any person or persons claiming to be aggrieved by any judgment, decree or order for the sale of any such real estate as aforesaid, may appeal from the same to the Supreme Court of this State. The appeal here allowed is cumulative merely, the right to a writ of error existing at common law. The county court, then, having as full and complete jurisdiction in such cases as the circuit court, and no appeal being allowed from the final order of the circuit court, it would follow necessarily, to prevent a failure of justice, that error should lie to this court."

It is to be noted that this case arose under the constitution of 1848, and while so much of the act of July 1, 1829, above cited, was in full force. This case in effect holds that, by virtue of the provisions of the act of 1849, above referred to, applications by administrators in the county court to sell real estate are, for the purposes of this writ, placed upon the same footing as like applications in the circuit court.

Although applications of the kind are purely statutory proceedings, not conducted according to the course of the common law, and for that reason could not by the common law rule be removed by writ of error to this court for the purpose of review, nevertheless it seems to have been supposed in the case we have been considering that the writ in such proceeding, when brought in the circuit court, was warranted not only by the statute, but also by the common law, as a matter of right. But the latter branch of the proposition, as we have already seen, was clearly too broadly stated. 2 Tidd, 1056, Farrand's edition of 1807.

It is further to be observed that this case also expressly holds that the statutory right to remove a case from the circuit court to this court by appeal is merely cumulative, and does not at all affect the common law right to bring it here by writ of error.

*Coon* v. *Mason County,* 22 Ill. 666, was a proceeding originally commenced in the county court under the Road law for the purpose of inquiring into the damages claimed to have been sustained by plaintiff in error by reason of a newly located road crossing his land, and by him subsequently appealed to the circuit court. The case being brought from the circuit court before this court by writ of error, the same, on motion, was dismissed. The court, in allowing the motion, said: " This proceeding was under the thirty-eighth section of the chapter entitled Roads, (Rev. Stat. 1845, sec. 38,) which provides that the decision of the circuit court shall be final. We are of opinion that the legislature intended to prohibit the prosecution of a writ of error, as well

as an appeal. This case arose under the same constitutional and statutory provisions relating to appeals and writs of error, heretofore noticed, that were in force at the time the case of *Unknown Heirs of Langworthy* v. *Baker* occurred, and, like that, was a purely statutory proceeding.

The cases, however, differ in this, that by an express provision of the Road law, the decision of the circuit court in the latter case is made final, whereas there is no such provision with respect to the other.

In *Hobson et al.* v. *Paine et al.* 40 Ill. 25, it is held that a writ of error does not lie to the county court for the purpose of bringing in review the action of that court in the appointment of an administrator of an estate, and the case is distinguished by the court from that of *Unknown Heirs of Langworthy* v. *Baker, supra.*

In the case of *Moore* v. *Mayfield,* 47 Ill. 167, it is held that " under the ninth section of the Election law of 1845, the decision of the circuit court, on an appeal from the decision of the justices, in the matter of a contested election, is final, and can not be reviewed in the Supreme Court," and the writ of error in that case was accordingly dismissed. The court places its decision mainly upon the statute, which expressly declares that the decision of the circuit court in that class of cases shall be final, and refer to *Coon* v. *Mason County, supra,* where a similar statutory provision was held conclusive.

The provision of the constitution of 1848, which declares that " the Supreme Court may have original jurisdiction in cases relative to the revenue, in cases of *mandamus, habeas corpus,* and in such cases of impeachment as may be by law directed to be tried before it, *and shall have appellate jurisdiction in all other cases,*" seems to have been for the first time pressed upon the attention of the court in this case. Without attempting to define exactly what was meant by that provision, the court said: " Whether this clause of the constitution was designed to give to this court appellate juris-

diction in all cases except those specified, in which it is given original jurisdiction, not subject to any legislative restrictions or limitations in that regard, or merely to define the general character of its jurisdiction as being appellate only, except in the cases specified, it is not here necessary to consider, as the proceeding to contest an election under our statute is not a *'case,'* within the meaning of that section of the constitution. That term would refer more properly to an action at law or a suit in chancery, but this proceeding is neither the one nor the other."

In *Fitzgerald* v. *Glancy, Admr. etc.* 49 Ill. 465, this court adhere to the rule first laid down in *Unknown Heirs of Langworthy* v. *Baker, supra.*

*The People ex rel.* v. *Smith,* 51 Ill. 177, which was a contested election case, announces the same rule as that laid down in *Moore* v. *Mayfield, supra.*

In *Holden et al.* v. *Herkimer et al.* 53 Ill. 258, being a writ of error from this to the Court of Common Pleas of the city of Mattoon, which was a court of record, having concurrent jurisdiction with the circuit court in civil cases and all matters of debt, it was held the writ would not lie. The act of of 1869 creating the Court of Common Pleas, provides for appeals from its final judgments to the circuit court of Coles county. This court, in the course of the opinion rendered in that case, said: "In the absence of statutory provision, we are aware of no law which authorizes this court to hear writs of error directed to inferior courts, or causes sought to be removed therefrom to this court." The language here used, if not confined to the particular facts of the case before the court, or to cases involving a similar state of facts, would seem to warrant the conclusion that a writ of error would not lie from this to any inferior court without some special legislation authorizing the same, which, without any qualification, as we have already seen, would be in direct conflict with the common law rule on this subject. This general question was not involved in the case, and of necessity could

not have been determined by it.   What the case really does
decide is, that a writ of error does not lie to an inferior
court of record where the right of appeal is given to some
intermediate court, although such inferior court exercises its
jurisdiction according to the course of the common law.   It
will be observed that the decision is, to some extent, a limit-
ation upon the general terms in which the common law rule
is expressed, *excepting from its operation all cases where the
right of appeal is given to* some intermediate court.   But the
decision does not at all contravene the common law rule by
which the writ is authorized to all inferior courts of record
exercising their jurisdiction according to the course of the
common law, where no such right of appeal is given.   In
such cases the right to the writ still exists, as at common law.

· The case of *Horner* v. *Goe et al.* 54 Ill. 286, upon the
authority of *Hobson et al.* v. *Paine, supra,* holds that the
writ does not lie from this to the county court for the pur-
pose of reviewing its proceedings in the grant of letters of
administration, and on that ground the writ in the case was
dismissed.

*Schlattweiler* v. *St. Clair County,* 63 Ill. 449, was an appeal
from the county court of St. Clair county to the circuit court,
from an assessment of damages on a petition for the change
and relocation of a public road, and subsequently brought from
the circuit court to this court by a writ of error.   Among other
things, it was objected that the writ did not lie, for the reason
that the statute under which the proceedings were had ex-
pressly provided that the decision of the circuit court should
be final, and in support of this position the cases of *Coon* v.
*Mason County,* and *Marion County* v. *Harper, supra,* were
cited and relied upon.   The objection, however, did not pre-
vail, and the writ was sustained.   The court said: " The
point is made by defendant in error that a writ of error will
not lie in this case, and reference is made to the cases of *Coon*
v. *Mason County,* 22 Ill. 666, and *Marion County* v. *Harper,*
44 id. 482, where it was so held.   In these cases the consti-

tutional right to an appeal or writ of error was not raised. Section 2, article 6 of the constitution gives to the Supreme Court appellate jurisdiction in *all cases*, except cases relating to the revenue, in *mandamus* and *habeas corpus*, in which cases it has original jurisdiction. By section 8 of the same article it is provided that appeals and writs of error may be taken to the Supreme Court held in the grand division in which the case is decided, or, by consent of parties, to any other grand division. The right to an appeal or to sue out a writ of error is a constitutional right, and must be allowed when claimed."

It is clear this case in effect overrules *Coon* v. *Mason County*, and *Marion County* v. *Harper*, *supra*, and all cases resting on them, for the present constitution and that of 1848 are substantially the same so far as the right to an appeal or writ of error is concerned. And it is further to be observed, with reference to this case, that it was one in which the right to a writ of error is not given by the common law, by reason of being a purely statutory proceeding, and not conducted according to the course of the common law.

If this case is to be regarded as authority, it follows that the right to this writ is given by the constitution in a large class of cases where, by the common law, it is denied. The doctrine of the last case considered is fully recognized and approved in *St. Louis and Southeastern Railway Co.* v. *Lux*, 63 Ill. 523.

*Hall* v. *Thode*, 75 Ill. 173, was a contested election case in the county court, and it was held that a writ of error did not lie to the county court for the purpose of bringing its proceedings to this court for review. The proceeding being purely of a statutory character, the writ was not warranted by the common law, and it was held, inasmuch as the right of appeal from the county court to this court was expressly given by statute, that mode alone of bringing the case to this court was warranted by law. But it is expressly stated in

that case, if the right of appeal to this court had not been given, the writ would have been entertained.

From this review of the authorities it is clear that a writ of error lies in this State from either this court or the Appellate Court to all inferior courts of record, for the purpose of reviewing their final determinations in all cases involving property rights or personal liberty, where no appeal is given from such inferior court of record to some intermediate court or to this court. And furthermore, that this right exists independently of any statutory or constitutional provisions, by force of the common law, in all cases in which the jurisdiction of such inferior court is exercised according to the course of the common law. And in the latter class of cases the writ lies to the circuit courts, whether an appeal is given or not. Where an appeal is given it is to be regarded as merely cumulative. In addition to the authorities already cited, the conclusion here reached is supported by the following cases: *Peak* v. *The People*, 76 Ill. 289; *Village of Hyde Park* v. *Dunham*, 85 id. 569.

We are aware of no statutory provision which authorized an appeal to the circuit court from the order of the probate court committing the plaintiff in error for the alleged contempt, and it is clearly a final determination of that court in a criminal proceeding directly affecting his liberty, and unless a writ of error lies to the probate court in such a case, he would be wholly remediless, however much error may have intervened. The right to a writ of error in a case like this is clearly deducible from the authorities already examined, and the case of *Stuart* v. *The People*, *supra*, is an authority directly in point upon the question. See, also, *Storey* v. *The People*, 79 Ill. 45. The writ in this case we regard as being warranted both by the common law and the constitution of the State.

The authority for the commitment in this case, if it exists at all, is found in the 114th section of chapter 3 of the Rev.

Stat., which, so far as it relates to the question involved, is as follows :

" § 114. If any executor or administrator shall fail or refuse to pay over any moneys or dividends to any person entitled thereto, in pursuance of the order of the county court, lawfully made, within thirty days after demand made for such moneys or dividends, the court, upon application, may attach such delinquent executor or administrator, and may cause him to be imprisoned until he shall comply with the order aforesaid, or until such delinquent is discharged by due course of law," etc.

Before the probate court is warranted in making a commitment in any case under the provisions of this section, it must appear, among other things, that the administrator has failed or refused to pay over the moneys in his hands to the person or persons entitled thereto, in pursuance of the order of the court, within thirty days after demand made for such moneys.

A demand upon the administrator for the moneys is clearly one of the necessary elements that enters into the offence which authorizes such a commitment.

It is conceded no such demand was made in this case, and the conclusion is irresistible that the offence contemplated by the statute was not committed, unless the agreement executed by plaintiff in error waiving the demand has, in law, the effect of dispensing with that element in the offence. To give it that effect would be to hold that parties, by mere private agreement, could change the positive law of the State. The offence authorizing such commitment is purely statutory, and the legislature has with great particularity defined the elements that enter into it, and we are aware of no principle that would authorize parties by mere private agreement to dispense with a part of them, or substitute others in their place. We can well understand how, in the administration of justice, one can make, for the purposes of a trial, admissions of facts that never occurred, and still be bound by them, and also how one is often concluded by admissions made out

12—97 ILL.

of doors, when it would be a violation of good faith to permit him to deny them; but it is difficult to perceive how one can, by mere agreement, dispense with a fact which is an essential element in a crime, and thereby render himself guilty, when it is admitted upon the record the fact never did occur.

Suppose A should take the horse of B, under an honest belief that he belonged to him, and being arrested for the larceny of the horse, should enter into an agreement with the State's Attorney to waive all proof of the felonious intent in taking the horse. No one, we presume, would claim for a moment that A could be convicted of larceny, notwithstanding the admission, if it affirmatively appeared, on the trial, that A took the horse under the belief that he belonged to him. And yet there would seem to be as good grounds for sustaining a conviction in the supposed case as in the one at bar. In either case one of the essential elements constituting the offence is wanting.

On principle, the fact of a demand, as a constituent part of the offence contemplated by the statute, could no more be dispensed with by mere agreement than the element of malice in murder, or felonious intent in larceny. As well might it be contended that a thing may exist as a whole without all of its constituent parts. It is impossible in the very nature of things. And it is equally impossible for mere private persons by agreement to dispense with any of the elements that enter into a criminal offence. The power to do that is vested in the legislature alone.

It may be urged that having waived the demand, the administrator is just as culpable for failing to pay over the money as if the demand had been made. That may be so in morals, but courts do not sit to enforce mere moral rules, except where they constitute a part of the positive law of the State. But the conclusive answer to this is, that the offence consists in failing to pay over after *demand made,* and not after demand *waived,* and there is no power outside of the legisla-

ture to substitute one for the other.  *Wright* v. *The People,* 61 Ill. 382.

As the facts disclosed by the record fail to bring the plaintiff in error within the provisions of the statute, it follows the probate court was not warranted in making the commitment.

As this view of the matter disposes of the case upon its merits, it is unnecessary to notice other questions raised upon the argument.

The judgment of the probate court is reversed, and plaintiff in error discharged from further imprisonment.

*Judgment reversed.*