Beattie v. The People.

CHARLES J. BEATTIE

v.

THE PEOPLE EX REL. ETC.

*Contempt—Attorney—Introduction of False Testimony—Divorce— Bogus Decree—Limitations—Sec. 4, Div. 4, and Secs. 5, 6, 7 and 20, Div. 2, Chap. 38, R. S.—Sec. 225, Chap. 38, R. S.—Felony—Misdemeanor.*

1.   Acts in disrespect of a court or its process which obstruct the administration of justice are in the nature of criminal offenses, and in such cases the prosecutions must be in the name of the people.

2.   An attorney who procures false evidence, knowing it to be false, with the intention of deceiving the court, is not only guilty of contempt of court, but of subornation of perjury, a felony, as well.

3.   Upon motion to commit for contempt an attorney adjudged to be guilty of the presentation in a given case of testimony known by him to be false, and in issuing a fictitious copy of a decree for a divorce therein, this court holds that the prosecution of the charge of contempt was barred by the statute of limitations of one year and six months under Sec. 4, Div. 4, Chap. 38, R. S.

[Opinion filed December 2, 1889.]

IN ERROR to the Superior Court of Cook County; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. W. P. BLACK and C. S. BEATTIE, for plaintiff in error.

The alleged contempt is within the bar of the statutes of limitations. This is a criminal case and the proceedings are criminal proceedings. Clark v. People, Breese, 266; Stuart v. People, 3 Scam. 295; Haines v. People, 97 Ill. 161; Hill v. Crandall, 50 Ill. 70; People v. Neil, 74 Ill. 68.

Being a criminal offense it is either a felony or a misdemeanor. And as the punishment may be less than that provided for felony it is a misdemeanor. This subject is fully discussed and settled in Lamkin v. People, 94 Ill. 501.

Any number of pages might be written upon the application of the eighteen months limitation to this misdemeanor, and yet not be so satisfactory as this Lamkin case. And the only reason ever heretofore assigned, so far as counsel are advised, why the bar of the statute did not reach this kind of cases, is the suggestion of the judge below, in passing upon this case as found in the Law Bulletin of March 29, 1889, from which we quote:

"The scope of this statute is not as broad as counsel seems to regard it. It does not limit to one year and six months the commencement of 'all criminal proceedings of every kind below the grade of felony;' it simply limits 'all prosecutions by indictment or otherwise, for misdemeanors.'

"The question then is, is this offense a misdemeanor as defined by our statute? If it is, then the proceedings must be quashed. The statute says: 'A felony is an offense punishable with death or by imprisonment in the penitentiary. Every other offense is a misdemeanor. Where the performance of any act is prohibited by statute, and no penalty for the violation of such statute is imposed, the doing of such act is a misdemeanor, and may be punished by fine,' etc.

"It will be seen from this that the Legislature has defined a misdemeanor to be every offense lower than a felony prohibited by statute; and therefore the statute limiting prosecutions for misdemeanors to one year and six months applies only to such acts, lower than felonies, as are prohibited by statute.

" Misdemeanors at common law are divided into two classes: first, such as are penal at common law, and second, such as are penal by statute.   It is the latter class of misdemeanors which our statute defines, and it is to that class only the limitation applies.   The misconduct charged in these proceedings does not come within the category of acts prohibited, or penal by statute, and therefore is not affected by the statute limiting prosecutions for misdemeanors.

" The principle here contended for is, I think, recognized in the case of The People ex rel. Ebenezer Noyes v. Francis A. Allison, 68 Ill. 151.   That was an information filed in the Supreme Court for a rule upon Allison to show cause why his name should not be stricken from the roll of attorneys. In discharging the rule the court says : ' Nearly seven years have elapsed since the alleged misconduct.   No explanation is given for the delay, and the law will not favor prosecutions of this character after the lapse of such a great length of time. *  *  *   The parties whose rights are injuriously affected by conduct of the character alleged, ought to exhibit his information within a reasonable time.   *  *  *   In analogy to our statutes which bar prosecutions for misdemeanors, there ought to be a limit as to the time in which information could be filed.' "

It seems then, according to the opinion of the judge below, that a certain class of misdemeanors, to wit, " those not made so by statute," are not within the bar of any statute of limitations.

In defining misdemeanors our statute does not recognize two classes.   "Every other offense (than felony) is ' a misdemeanor,' " whether made so by common law or by statute, and whether the punishment is provided by common law or by statute.   And so that no question may arise, a class of cases made offenses by statute, and *to which no punishment had been affixed*, are declared to be misdemeanors.

The case of People ex rel. Noyes v. Allison, 68 Ill. 151, cited by the judge below, and the reasoning based by him thereon, has no application to the question here.   "Striking an attorney's name from the roll is not viewed as punishment for contempt."   Rapalje on Cont., Sec. 15, and cases cited.

Mr. JOHN A. ROSE, for defendant in error.

It is contended by counsel for Beattie that the statute of limitations relating to misdemeanors includes contempt proceedings. In other words, they say : Admitting that Beattie is an officer of the court; admitting that as such officer Beattie did manufacture testimony and offer it upon the trial of the Gordon case, and thereby prostitute the court for gain; admitting that he did knowingly give to the complainant in that case a paper purporting to be an absolute decree of divorce, knowing at the same time that none had been granted, and did thereby commit an atrocious fraud upon his client; admitting that it did not come to the knowledge of the court before which, and against which, these contemptible frauds were committed, until more than eighteen months after they were committed, and admitting that the court did move at once upon receiving proper information that they had been committed; admitting all this, they say, what of it? This occurred more than eighteen months ago; this is barred; you are powerless to vindicate the dignity of the court; powerless to punish a trusted officer of the court for basely imposing upon it and upon a client. It is true he did all these things, but he covered his tracks so well that you did not find it out until more than eighteen months after it was committed, and now we would be pleased to know what you are going to do about it?

Criminal contempts are defined to be direct, such as are committed in the presence of the court while sitting judicially; and constructive, such as, though not committed in the presence of the court, yet tend to obstruct, embarrass, or prevent the due administration of justice therein. People v. Wilson, 64 Ill. 195; Whittem v. State, 36 Ind. 196.

And superior courts of record have always exercised the power by contempt to punish their officers for negligent, corrupt or oppressive conduct, whereby injury has been wrought upon third parties, and whereby the court itself and the administration of justice have been brought into disgrace. Cartwright's Case, 114 Mass. 230; In re Pitman, 1 Curtis, 186; Yates v. Lansing, 9 Johns. 395.

Criminal contempts are offenses against the State, and are so because they are offenses against the administration of justice; and the act which so constitutes an *offense* against the State, may or may not constitute a *crime* against the State; or, restated, the act which constitutes a contempt, may be a felony, as subornation of perjury by an attorney (State v. Holding, 1 McCord (S. C.) 379); may be a misdemeanor, as an assault by an attorney in a court room (Middlebrook v. State, 43 Conn. 257); or may be neither the one nor the other, as for a Jew to refuse to be sworn on Saturday (Stansbury v. Marks, 2 Dallas (Pa.), 213; and a court can rightfully punish it on summary conviction, whether the same act be punishable as a crime on indictment or not; a conviction on indictment will not purge the contempt, nor will a conviction for a contempt be a bar to an indictment; the offense may be double; and so are the remedy and the punishment.    Middlebrook v. State, 43 Conn. 257.

The power of the courts in this regard being founded on the principle of self-preservation, it does not at all deprive them of it that the law has provided some other mode for punishing the offender; it is quite immaterial that the offense is indictable.    Rex v. Lord Ossulston, 2 Strange, 1107; Sub. Nom. King v. Pierson, Andrews, 310.

And the right of punishing contempts by summary conviction is inherent in all superior courts of justice, and is essential for their protection and existence.    It is a branch of the common law adopted and sanctioned in this State.    The discretion involved in this power is in a great measure arbitrary and undefinable; and yet the experience of ages has demonstrated that it is perfectly compatible with civil liberty, and auxiliary to the purest mode of justice, and the known existence of such a power prevents, in a thousand instances, the necessity of executing it.    Cartwright's Case, 114 Mass. 230; Middlebrook v. State, 43 Conn. 257; People v. Wilson, 64 Ill. 195.

What are superior courts within the meaning of this rule is an important subject of inquiry, and it may be stated at the outset that it is not at all necessary to the inherent power of

the court to fine and imprison for criminal contempt, that it should have criminal jurisdiction. The Court of Common Pleas in England had no criminal jurisdiction, but its inherent power in this regard was never questioned. So the Court of Common Pleas of Connecticut has no criminal jurisdiction, but its power in this regard, when questioned, was distinctly affirmed. Middlebrook v. State, 43 Conn. 257.

The power to punish for contempt being inherent in courts of justice, and necessary to enable them to preserve their dignity and enforce their process, and so attain the ends of their creation, the power of the Legislature to regulate the same may well be doubted. Arnold v. Commonwealth, 80 Ky. 300; Ex parte Robinson, 19 Wal. 510; Re Wolley, 11 Bush (Ky.), 95.

If the court is created by the constitution, and the Superior Court of Cook County is a constitutional court, it is clear upon principle that the Legislature has no such power unless it is conferred upon it by the constitution, and it has been so decided. State v. Merrill, 16 Ark. 384.

"In the absence of constitutional provision on the subject, the better opinion seems to be that legislative bodies have not the power to limit or regulate the inherent power of courts to punish for contempt. This power being necessary to the very existence of a court, as such, the Legislature has no right to take it away or hamper its free existence. This is no doubt true in the case of a court created by the constitution. Such a court can go beyond the provisions of the statute in order to preserve and enforce its constitutional powers, by treating as contempts acts which may clearly invade them." Rapalje on Contempt, Sec. 111.

"If the court be created and its jurisdiction conferred by the constitution, then the power to punish for contempts in such court also exists by virtue of the constitution, and the Legislature can not deprive the court of such power." State v. Frew, 24 West Va. 460. "The power to punish for contempts is incidental to all courts of justice, independently of statutory provisions." Clark v. People, Breese, 340. "Courts possess the power to punish contempts independently of leg-

Beattie v. The People.

islation, and this power is one the Legislature can neither destroy nor abridge." Holman v. State (Ind.), 5 N. E. Rep. 556.

"The constitution has established the judiciary and made it a co-ordinate department of the State government, and necessarily incidental is the power to punish for contempts. This power is incidental to all courts of justice independently of statutory provisions." People v. Wilson, 64 Ill. 225.

"It is conceded that a court has the inherent power to punish, by fine and imprisonment, for contempt; and, it might be added, the Legislature has no power to take from the court the power to protect itself from such flagrant contempts as are offered to the court in this particular case. To sanction the exercise of such legislative action would, in effect, defeat the administration of justice." Arnold v. Commonwealth, 80 Ky. 300.

"The Legislature can not take away from a court any jurisdiction given to it by the constitution." Burns v. Henderson, 20 Ill. 264.

"The statutory enumeration of acts constituting contempts can not be taken as the arbitrary measure of an inherent power of the court to punish for contempt." Hughes v. People, 5 Col. 436.

"The Legislature has no power to abridge the jurisdiction of the Circuit Court." Meyers v. People, 67 Ill. 509; Wilson v. People, 94 Ill. 426.

"Under the constitution there is no distinction between the Superior Court of Cook County and the Circuit Court of Cook County; both courts have the same jurisdiction and exercise the same powers." Berkowitz v. Lester (Ill.), 11 N. E. Rep. 860.

"The Superior Court of Cook County has the same powers as the Circuit Court." Jones v. Albee, 70 Ill. 34; Samuel v. Agnew, 80 Ill. 553.

In a contempt of court there may be the element of contumacy, and all cases of contempt which contain this element are called criminal contempts, and their punishment, in consequence, is termed a criminal proceeding; but this is not,

strictly speaking, accurate; as a contemnor is not entitled to many, if any, of the rights of trial guaranteed a criminal.

1.   A criminal proceeding can only be begun in a superior court by indictment or information.   Neither is necessary in case of contempt.

"This (a criminal contempt) is not, strictly speaking, a criminal proceeding, for such a charge must either be presented by indictment or information."   Whitman v. State, 36 Ind. 203; Teller v. People, 7 Col. 45.

2.   In a criminal proceeding, the prisoner is entitled to a trial by jury, a contemnor is not.

"In a proceeding for contempt the party is not entitled to trial by jury."   Neil v. State, 9 Ark. 259.; Hughes v. People, 5 Col. 436.

3.   A contemnor is never entitled to a change of venue; a prisoner may be.

"Information against persons for contempt, are not within the meaning, nor of the character of information, in the 5th section of the act in relation to change of venue.   Rev. Stat. 528.   Informations, within the meaning of said act, are such as are punishable under the provisions of the criminal code," etc.   Crook v. People, 16 Ill. 535.

4.   It is very doubtful whether the executive has the power to pardon a contemnor; he certainly has to pardon a criminal.   It has been held that he has that power, but as respectable an authority as Judge Story holds that he has not.

I contend that the statute of limitations applicable to misdemeanors does not cover prosecutions for contempt; that statute applies only to prosecutions based upon indictment of a grand jury, informations filed *ex officio* by the state's attorneys, and on appeals from justices of the peace, etc.

In the statutes of 1845 (Sec. 5, p. 528) providing for changes of venue in criminal cases, the opening sentence is as follows: "That when any defendant in any indictment or information in any court of this State," etc.

The statute then goes on and provides in what cases change of venue shall be allowed.   In a case of contempt, the contemnor prayed a change of venue, and relied upon that statute

in its support.    The Supreme Court of this State held that the word information in that statute did not relate to contempts, and in the opinion used the following language:

"Informations against persons for contempts in disturbing the order of court in the presence or out of it, are not within the meaning nor in the character of informations, in the fifth section of the act in relation to change of venue.    Rev. Statutes, 528.    Informations within the meaning of said act, are such as are punishable under the provisions of the criminal code upon presentment of the grand jury, informations filed *ex-officio* by the state's attorneys, and appeals from justices of the peace," etc.    Crook et al. v. People, 16 Ill. 535.

The opening sentence of the statute of limitations is: "All prosecutions by indictment or otherwise for misdemeanors," etc.    I contend that the word "otherwise" as there used means information by the state's attorney, appeals from justices, etc., and does not include informations for contempts.    This position, in my judgment, is fully sustained by the Crook case.

I have searched the books in vain for a contempt case in which the statute of limitations was interposed.

The case which, in my judgment, is most analogous to this, is one for the disbarment of an attorney.    In a recent case of that nature in California this defense was interposed, but was held bad.    The court says: "As to the objection made that the offenses charged are barred by the statute of limitations, it appears that the acts complained of were committed some three years since.    We do not understand that a charge of this kind can be barred by the statute of limitations, or that it should be under any circumstances.    The fullest opportunity should be given to investigate the conduct of an attorney who is charged with a violation of his duties as such.

"We are not prepared to say, as a matter of law upon this demurrer, that the accusation is barred either by the express terms of the statute of limitations or by analogy."    In re Lowenthal, 21 Pacific Reporter, 7.

The same doctrine is virtually announced in The People, etc., v. Allison, 68 Ill. 151, the court holding that in a case of that nature the information should be filed within a reasonable time.

GARNETT, J.    Charles J. Beattie, an attorney at law prac-
ticing in Chicago, was employed by Ada E. Gordon to pro-
cure a divorce for her from her husband, George B. Gordon.
To that end he filed a bill for divorce in her name against her
husband in the Superior Court of Cook County, on March 4,
1877, charging the defendant with cruelty, desertion and
adultery.    The husband, being a non-resident, was served by
publication.    The cause came to a hearing on May 7th of that
year, the defendant having been defaulted for want of appear-
ance.    The deposition of James L. Watson, which was taken
by Beattie before a notary public, was read on the hearing,
and Mrs. Gordon testified orally in her own behalf.    The
judge before whom the case was tried was not satisfied with
the evidence, and continued the hearing to the 27th of the
same month.    After the hearing on May 7th, and on the same
day, Beattie delivered to Mrs. Gordon what purported to be a
copy of a decree of divorce in the cause, and she, later in the
same day, was married to one Wilson.

On May 27th Beattie again appeared in court and called R.
J. Coffeen as a witness.    Watson and Coffeen testified to the
same acts of infidelity by the defendant, and upon their evi-
dence a decree was entered the next day, May 28th, divorcing
Ada E. from George B. Gordon on the ground of his adultery.
At the February term, 1889, of the Superior Court, George
B. Gordon filed a petition to vacate the decree, alleging that
the testimony of Watson and Coffeen was untrue, and on
March 7th he filed a second petition alleging that the charge
of adultery against him was false, and that he believed that
Beattie, without the knowledge of Mrs. Gordon, procured
said witnesses to sustain the charges of the bill, knowing that
they had no knowledge of adultery of the petitioner, and that
on May 7, 1887, before any decree was entered, Beattie
delivered to said Ada a paper purporting to be a true copy of
decree entered in said cause, and praying that a rule might
issue against Beattie to show cause why he should not be
attached for contempt.    A rule to show cause was entered,
Beattie came in March 12th, denied the contempt, and moved
for an order requiring the petitioner to file interrogatories,

which was done. Beattie answered the interrogatories, and upon the issues formed, the court adjudged him guilty of contempt in the presentation of testimony which he knew to be false, and in issuing to Ada E. Gordon a fictitious copy of a decree for a divorce in the case, and sentenced him to imprisonment in the county jail for a year and to pay a fine of $500 and costs.

On the hearing of the motion to commit for contempt, appellant moved the court to dismiss the prosecution on the grounds that the same was barred by the statute of limitations of one year and six months, and that is the defense requiring consideration. The statute (Sec. 4, Div. 4, Chap. 38) is as fol lows: " All prosecutions, by indictment or otherwise, for misdemeanor, or for any fine or forfeiture under any penal statute, shall be commenced within one year and six months from the time of committing the offense, or incurring the fine or forfeiture, except as otherwise provided by law." Sec. 5 of Div. 2, Chap. 38, describes a felony as " an offense punishable with death, or by imprisonment in the penitentiary," while by Sec. 6, " Every other offense is a misdemeanor. Where the performance of an act is prohibited by any statute, and no penalty for the violation of such statute is imposed, the doing of such act is a misdemeanor, and may be punished by fine not exceeding $100, or imprisonment in the county jail not exceeding six months, or both, in the discretion of the court." This is not the case of a civil contempt, in which the action of the court is for the benefit or advantage of another party to the proceeding, but appellant is charged with a criminal contempt in doing that which obstructs the administration of justice. See Rapalje on Contempts, Sec. 21.

The Supreme Court of this State has uniformly held that acts in disrespect of the court, or its process, which obstruct the administration of justice, are in the nature of criminal offenses. Stuart v. The People, 3 Scam. 395; Haines v. The People, 97 Ill. 161; The People v. Neill, 74 Ill. 68.

In this the Supreme Court of the United States fully agrees, having decided that a contempt of that kind is a specific criminal offense, and the imposition of a fine, therefore, a

judgment in a criminal case. New Orleans v. The Steamship Co., 20 Wal. 387.

The prosecution in such cases must be in the name of the people. The punishment is either by fine or imprisonment, or both. If the accused is acquitted, the people can neither have an appeal, nor maintain a writ of error (People v. Neill, *supra*), the reason given being that a proceeding for contempt in thwarting the process of the court was a prosecution in behalf of the people and in the nature of a criminal proceeding.

"Many acts are both contempts of court and indictable crimes. * * * The indictment and the proceeding for contempt are entirely distinct and neither will be a bar to the other." 2 Bishop on Criminal Law, Sec. 264.

An attorney who procures false evidence, knowing it to be false, with the intention of deceiving the court and thus interfering with the due administration of justice, is not only guilty of contempt of court, but of subornation of perjury, a felony punishable by imprisonment in the penitentiary not less than one year, nor more than fourteen years. Sec. 225, Chap. 38, R. S. The punishment of contempt fixes its character as a misdemeanor, as the penalty may be either by fine or confinement in jail, or both. Lamkin v. The People, 94 Ill. 501.

No doubt can be entertained that the prosecution of the felony (subornation of perjury) may be barred in three years, but the State contends that the minor offense (contempt of court) may be punished whenever the machinery of the law is set in motion. And the sentence of the Superior Court proceeded upon the theory that the limitation is only applicable to misdemeanors prohibited by statute, and as there is no prohibitory statute for this class of contempts, the offender is exposed to punishment without limit as to time of instituting the proceedings. If this peculiar intent is to be attributed to the Legislature, it must be made very plain from the language of the statute. That there is any good reason for greater lenity in dealing with offenses prohibited by statute than those governed by common law, has not been suggested. The more flagrant the offense, the more natural it is that the Legislature

should attempt to repress it by express statute, and the more remote the probability that to such cases a special and discriminating favor should be extended. It can not be supposed that the law intended relief and immunity, after the lapse of a year and six months, for all misdemeanors prohibited by a statute, while offenses of the same class recognized by common law only, are exposed to prosecution at any time during the life of the offender.

The fact that the contempt charged against Beattie is one of the gravest character, can not affect the application of the rule. If the bar of the statute is denied here, it must be denied to all classes of misdemeanor, however trivial, which have escaped the denunciation of statute law. Adopting that rule, such offenses are as far removed from oblivion by lapse of time as murder, which may be the subject of indictment at any period after the death of the person killed. All felonies except arson and forgery, are barred in three years, if the accused during that time is usually and publicly resident within this State.

A felony, however, is uniformly treated as deserving of greater odium and severer punishment than any misdemeanor. For some misdemeanors, it is true, the jury may in their discretion imprison in the penitentiary. But if alternative penalties are provided, one of which is imprisonment in the county jail or fine, the offense is a misdemeanor, although the accused might have been confined in the penitentiary, in the discretion of the jury. Lamkin v. The People, *supra.*

Imprisonment in the penitentiary is the last penalty for a felony, and Sec. 7, Div. 2, Chap. 38, declares every person convicted of certain felonies, including subornation of perjury, infamous, and the offender is rendered incapable of holding any office of honor, trust or profit, of voting at any election or serving as a juror, unless he is again restored to such rights by the terms of pardon or otherwise, according to law. With these provisions of the statute before us, we can not believe that Sec. 4, Div. 4, Chap. 38, was intended to exclude from the benefit of the one year and six months limitation, all misdemeanors not prohibited by statute. Indeed, the section provides that *all* prosecutions, by indictment or

*otherwise*, for misdemeanors, shall be commenced within one year and six months from the time of the committing of the offense, while Sec. 6, Div. 2, describes every offense as a misdemeanor which is not punishable by death or imprisonment in the penitentiary. These sections are so plain and unambiguous that nothing short of a strained and unnatural interpretation can find a distinction in them between the two classes of misdemeanors now under discussion. Neither can it be said that the Legislature in passing those sections, overlooked common law misdemeanors, and so had no intention to provide a limitation for misdemeanors not prohibited by statute. For, aside from the aversion of courts to the discovery of legislative oversight when the law is expressed in plain terms, we have positive evidence in Sec. 20, Div. 2, Chap. 38, that the subject of the offenses not prohibited by statute was under consideration, and the existence of misdemeanors not defined by statute recognized, as it is declared by that section that "all offenses not provided for by statute law may be punished by fine or imprisonment in the discretion of the court, provided the fine shall in no case exceed $500, and the imprisonment one year."

The People v. Allison, 68 Ill. 151, relied on by the State, does not decide the question now presented, but the court does say: " In analogy to our statutes which bar prosecutions for misdemeanors, there ought to be a limit as to the time in which the information could be filed."

Another argument for the State is that the power to punish for contempt is inherent in all courts, and necessary to preserve their dignity, enforce their process, and so attain the end of their creation; and if the court is created by the constitution, as the Superior Court is, the Legislature is without authority to prohibit the exercise of the power of the court. All that might be admitted, and we deny no part of the assertion when we say that the power to punish for contempt, without limit as to time, is not necessary to preserve the dignity of the court, or to enable it to enforce its process, or to attain the ends of its creation. Nor do State v. Merrill, 16 Ark. 384; Middlebrook v. State, 43 Conn. 257; Arnold v. Commonwealth, 80 Ky. 300; Ex parte Robinson, 19 Wal. 510;

Beattie v. The People.

Re Wolley, 11 Bush (Ky.), 95, deny the right of the Legislature to *regulate* the punishment of contempt. On the contrary, all of those cases (except 19 Wal. 510, where a doubt is expressed) recognize the right of the Legislature to regulate the power, but not to destroy or withdraw any part of it. These authorities do not appear to go as far in that direction as Stuart v. People, 3 Scam. 395, where it was said that the statute then in force might, with great propriety, be regarded as a limitation upon the power of the courts to punish for any other contempt than those named therein.

The statutes of limitation are no longer frowned upon by the courts, but are regarded as beneficent laws, promotive of peace and repose in the community, and not requiring anything unreasonable from those whose rights may be affected by their operation.

In Lamkin's case, the Supreme Court quotes approvingly the remarks of Mr. Wharton in relation to such statutes, as follows: " Here the State is the grantor, surrendering by act of grace its right to prosecute, and declaring the offense to be no longer the subject of prosecution. The statute is not a statute of process, to be scantily and grudgingly applied, but an amnesty, declaring that after a certain time oblivion shall be cast over the offense; that the offender shall be at liberty to return to his country and resume his immunities as a citizen, and that from henceforth he may cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Hence it is, that statutes of limitation are to be liberally construed in favor of the defendant, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition and notification by the Legislature of the fact that time, while it gradually wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt."

The members of this court are all of opinion that the prosecution of the charge of contempt was barred by the statute of limitations, when this proceeding was commenced.

The sentence of the Superior Court is reversed.

*Judgment reversed.*