JOHANNA , FITZGERALD

*v.*

MATTHEW GLANCY, Administrator of the Estate of

PATRICK MURRAY, Deceased.

1. ERROR—*writ of—will lie to county court to review proceedings granting an order to sell the real estate of decedents.* A writ of error will lie to the county court, to review the proceedings of that court in granting an order to sell the real estate of a deceased person, on application by the administrator. *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 484.

2. EXECUTORS AND ADMINISTRATORS—*real estate of decedents—cannot be sold—except to pay existing debts.* An order to sell the real estate of a decedent will not be made except to pay debts due and owing at the death of the decedent. *Dorman et ux.* v. *Tost.et al.*, 13 Ill. 127.

3. SAME—*order to sell real estate to pay debts contracted by the administrator—void.* And an order of the county court directing the sale of the real estate of a deceased person, to pay debts which were created by the administrator after the death of the intestate, is void.

4. SAME—*the expenses of unnecessary administration—not such a debt as would justify a sale of the land.* And where, at the time letters of administration are granted, there are no debts existing, and no question of distribution requiring the intervention of an administrator, the expense of administering, the result of unnecessary interference, cannot be regarded such a debt as would justify a proceeding to sell the land to pay it.

5. SAME—*administration—letters of—when may be issued after the lapse of seven years after the death of a decedent.* The lapse of seven years after the death of a decedent constitutes a bar to granting letters of administration, but which bar

may be removed by showing circumstances which prevented an earlier application for them.

WRIT OF ERROR to the County Court of Sangamon county; the Hon. WILLIAM PRESCOTT, Judge, presiding.

The opinion states the case.

Messrs. STUART, EDWARDS & BROWN, for the plaintiff in error.

Messrs. BRADLEY & OLDEN, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This record presents a case wherein it is attempted to pervert the statute relating to the administration and settlement of estates of deceased persons, to purposes and objects not contemplated by the statute, and which cannot receive the sanction of this court.

The facts are simply these : The deceased, Patrick Murray, was a bachelor, and the owner of a lot of ground in the city of Springfield. He went to Texas, and died there, August 10th, 1860, intestate, leaving no personal estate and no debts, and no property besides this lot, which was then valued at $700. A sister of his,—and it would appear she was the only blood relation of the deceased,—had married Matthew Glancy, and died leaving four children.

On the 25th of September, 1867, this Matthew Glancy obtained letters of administration on the estate of his deceased brother-in-law, and on the 5th of October thereafter, filed an inventory of the estate, in which there was no personal property included, and no other property except this lot.

It becoming indispensable that some debts should appear against the estate, the administrator paid an attorney at law fifteen dollars for services rendered him as administrator, and

still further to manufacture demands against the estate, well knowing there were no debts against it, he published a notice in the newspaper, at the cost of five dollars and five cents, to creditors to present their claims, after having expended nine dollars and ninety-five cents for the fees and expenses attending the granting of the letters of administration. These several items, amounting to thirty dollars, were allowed by the county court. On November 30, 1867, the administrator, after notice to the heirs at law, presented his petition to the county court for an order to sell this lot to pay the debts he had thus created, alleging, in his petition, and which the inventory he filed on the 5th of October also alleged, that there was not at any time any personal property.

The application was resisted by the plaintiff in error, who was one of the heirs at law, but the court, after going through the farce of proving up these claims, granted the order.

To reverse this order, the record of the county court is brought here by Johanna Fitzgerald, one of the heirs at law, by writ of error.

The defendant in error objects, that a writ of error will not lie to the county court to bring in review before this court the propriety of its action in granting letters of administration. This is so, as this court said in, *Hobson et al.* v. *Paine*, 40 Ill. 25, but this is not the purpose of this writ of error. Its purpose is, to bring before this court for review, the judgment of that court in granting the order of sale, and is governed by the case of *The Unknown Heirs of Langworthy* v. *Baker, Administrator*, 23 ib. 484. It was held in that case, that by the act of 1849, establishing county courts, such courts had concurrent jurisdiction with the circuit court in hearing and determining all applications for the sale of real estate of deceased persons for the payment of their debts, and therefore, as a writ of error would lie to the circuit court, the writ would lie directly to the county court in such cases, when an order of sale has been granted.

The objection to this proceeding is fundamental, and stands out in bold and startling relief, and if allowed, would subject the real estate of intestates dying free from debt, to the cupidity of unconscientious administrators, whose designs might be to appropriate it to themselves, to the injury of the heirs at law. The policy of our law most clearly is, that the real estate of decedents shall not be sold in this mode; except to pay debts due and owing at the death of the decedent. It would not matter if he left no personal estate—leaving debts which could only be paid by converting his realty into personalty for such purpose, would be ample justification to the county court, no doubt, for granting letters of administration, and passing an order of sale, the proceedings for such purpose being otherwise conducted according to the statute.

This is the first case, within our knowledge, where debts have been created by an administrator after the death of his intestate, and allowed by a court as claims against his estate, and an order granted to sell his lands to pay them. They were not such claims, and cannot, by any legal alchemy, be made such, and not being such, the order to sell this lot to pay them, was erroneous and void. It has no legal basis to rest upon, and none whatever for the application in the first instance. *Dorman et ux.* v. *Tost et al.,* 13 Ill. 127.

This lot descended to the heirs at law of Murray, affected only by such debts as existed against him at the time of his death. The very purpose of the application, as we regard the statute, is to obtain a fund by the sale of real estate, there being no personal estate, to pay debts so existing, and an administrator, by no law of which we are cognizant, can contract debts against the estate he represents, and to pay them, obtain an order to sell the land.

We concur fully with the Supreme Court of Pennsylvania in *Walworth* v. *Abel,* 52 Penn. 370, and with the Supreme Court of Missouri in *Farrar* v. *Dean,* 24 Mo. 16, that where there are no debts at the time letters of administration are

granted, and no question of distribution requiring the intervention of an administrator, the expense of administering, the result of unnecessary interference, cannot be regarded such a debt as would justify a proceeding to sell the lands. Such costs and expenses are not due by the deceased, and only arise from the officious and unnecessary intermeddling of the administrator.

Another objection is made by plaintiff in error, that the application for letters of administration was not made until after the lapse of seven years from the death of the decedent, and reference is made to the case of *McCoy* v. *Morrow*, 18 Ill. 519.

That case intimates, that the duration of a creditor's lien upon the real estate should be limited to seven years from and after the death of the intestate, in analogy to the lien of judgments. Circumstances might occur to prevent the issuing of letters until after the lapse of seven years from the death, the knowledge of such death not being brought home to the next of kin or to parties interested. It might be, in this case, as Murray died in Texas, in August, 1860, and such terrible events ensued immediately thereafter, that the fact was not known until the termination of hostilities. It might be safe to say that seven years shall be a bar to granting letters of administration, which bar might be removed by showing circumstances which may have prevented an earlier application for letters.

In this record we discover a most glaring disregard of the requirements of the statute. We see a case demanding the severest animadversions of this court. It has no law, justice, equity or shadow of right in any part of it to commend it to favorable consideration.

The judgment of the county court, ordering the sale of this lot, is reversed, at the costs of the applicant, to be taxed against him individually.

*Judgment reversed.*