John M. Berry, Surviving Executor of Estate of Thomas F. Berry, Deceased, Appellee, v. Thomas Berry, Jr., Appellant.

Gen. No. 9,562.

Opinion filed February 7, 1941. Rehearing denied April 2, 1941.

F. J. CAMPBELL, of Galena, and JAMES L. COBURN, of Galena, for appellant.

NACK & NACK, of Galena, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Thomas F. Berry, of Jo Daviess county, Illinois, died leaving a last will and testament, which was admitted

to probate in said county on January 6, 1931. Letters testamentary were issued to Ellen Berry, his widow, and to John M. Berry, a son, without bond. The second clause of the testator's will is as follows: "After the payment of my just debts and funeral expenses I give and bequeath the use, income, interest and rents of all the rest, residue and remainder of my estate, be the same real, personal and mixed, wherever situate and to which I shall be entitled to at the time of my death, to my beloved wife, Ellen Berry, she to have and to hold the same for and during the term of her natural life; if such income, interest and rents shall not be sufficient for the support and maintenance of my said wife, in health and in sickness she shall have the right to use of the principal of my estate for all such purposes." After the death of the testator's widow, the real estate owned by the testator was devised to the two sons. The remainder of the estate was given to the two sons in equal parts.

Shortly after the issuance of letters testamentary to the executors, an inventory was filed describing the real estate, and showing one, $100 liberty bond. After the inventory was filed, no further proceedings were had in the court relative to said estate, until March 12, 1938, at which time the surviving executor, John M. Berry, filed his report. Ellen Berry had died a short time previous. Because of the interest of the presiding judge of the county court, who had acted as attorney in the case, prior to his election, the cause was certified to the circuit court.

A petition was filed in the circuit court by the surviving executor asking for an order of said court to sell real estate to pay the debts of Thomas F. Berry, deceased. At the same time, he also filed what is alleged to be a true and correct report of the receipts and expenditures which he had made as executor of said estate. An objection was filed to the report by the appellant, Thomas Berry, Jr., in this case and an amended

report was filed. After hearing the evidence, an order was signed by the trial court that, the report of the executor be approved, and that he should proceed to sell the real estate to pay the debts of the testator, Thomas F. Berry, Sr., as prayed for in said petition. It is from this order that the appeal is perfected to this court.

The inventory filed in the estate shows that there was only $100 of personal property owned by the testator at the time of his decease, but in the petition to sell real estate to pay debts of the testator, it is stated that at the time of the death of Thomas F. Berry, there was cash on hand in the Merchant's National Bank of Galena, Illinois, in the sum of $3,545.82, and cash on deposits in the Galena National Bank, Galena, Illinois, of $3,000. In the testimony of John M. Berry, he states in answer to a question, ''Where did you get the money to pay the expenses?'' He answered, ''Out of the estate of Thomas F. Berry''; ''that there was something over $6,000.00 deposited in the bank and that the money was checked out by him and his mother for executor's expenses.''

From the record of the proceedings, it is established that at the time of the death of the testator, there was more than $6,000 in cash on deposits in the banks at Galena, Illinois. According to the report, and the record in this case, there was only approximately $1,000 indebtedness of the testator at the time of his death, and this included the funeral expense for the testator.

There are numerous assignments of error by the appellant why this judgment should be reversed, but we deem it necessary to consider only the first three, which will be discussed together. The assignments are: That the appellee has not made a just and true account of the personal estate, and deposits of the estate to the court; that the personal estate of the decedent was sufficient to pay the just claims and demand against said estate; that the claims and debts of the estate were

incurred subsequent to the death of the testator. We think the law is well established that in a proceeding to sell real estate to pay the debts of a testator, such debts that have actually been incurred by the testator himself, prior to his death, and his own funeral expenses, are the only debts that can be considered by the court in ordering real estate to be sold to pay debts. The law is clearly stated in the case of *Walker v. Diehl,* 79 Ill. 473, where the court uses this language: "An administrator derives his power to sell lands to pay debts from the statute, and unless the petition shows, by proper averments, the existence of a state of facts contemplated by the statute to authorize a sale, and those averments are sustained by proof, a decree of sale can not be sustained.

"The lands of one dying intestate descend to the heir. The administrator takes no estate or title in the lands. He has only a bare naked power to sell the lands for the payment of debts existing at the time of the death of the decedent, in case the personal property is insufficient.

"We understand the law to be well settled that real estate can only be sold, in a proceeding of this character, to liquidate debts which were in existence at the time of the death of the decedent. *Fitzgerald v. Glancy,* 49 Ill. 465.

"An administrator can not contract or incur indebtedness in the settlement of an estate, and make such indebtedness alone the foundation for a decree to sell real estate. If such was declared to be the law, landed estates would be at the peril of reckless and designing administrators, who might, in many instances, waste them in the payment of costs and commissions accruing during a negligent settlement of an estate.

"The policy of the law cannot uphold a decree of sale, unless the petition avers, and the proof sustains the averment, that the decedent, at the time of his

death, left debts that were legally chargeable upon his estate." This case has been followed in *Edwards v. Lane,* 331 Ill. 442, and in *In re Estate of Thurber,* 311 Ill. 211; *People for use of Stough v. Danforth,* 293 Ill. App. 280. In another early case, *Fitzgerald v. Glancy,* 49 Ill. 465, the law is there stated: "This lot descended to the heirs at law of Murray, affected only by such debts as existed against him at the time of his death. The very purpose of the application, as we regard the statute, is to obtain a fund by the sale of real estate, there being no personal estate, to pay debts so existing, and an administrator, by no law of which we are cognizant, can contract debts against the estate he represents, and to pay them, obtain an order to sell the land."

In the case before us, Mrs. Berry was given the income from the whole estate of her deceased husband, both personal and real, with the right to use any and all of the principal, if necessary, for her support and maintenance. The estate which she took at the death of her husband was the income from the realty, and also the personal property less the expense of the administration of the debts and funeral expenses of her deceased husband. The only use that the executors could make of the estate, was to collect the accounts due and to pay all claims that were properly filed in the probate court and allowed as just claims against the testator's estate. The report of the surviving executor shows that all of the indebtedness was incurred by the executors themselves after the death of the testator. As before stated, the only authority that the statute gives to sell real estate to pay debts, is for the debts that were incurred by the testator himself, prior to his death, and for funeral expenses.

It is our conclusion that the trial court erred in signing the order for the executors to sell the real estate in question, to pay the debts that had been incurred by

the executors after the death of the testator. The order of the trial court is hereby reversed and the cause remanded.

*Reversed and cause remanded.*