**BINNS, Exr., et, etc., Plaintiffs v. ISABEL et, Defendants.**

Common Pleas Court, Franklin County.

No. 157,986.  Decided July, 1942.

Binns & Tresemer, Columbus, for plaintiffs.

Walter R. Snider, Columbus, and James I. Boulger, Columbus, for defendants.

## OPINION

By RANDALL, J.

We have carefully considered the motion of plaintiffs for a new trial, the oral arguments and the briefs of counsel filed in connection therewith. In the brief filed on behalf of plaintiffs in support of the motion, counsel have cited and reviewed numerous Ohio authorities relating to the subject of collateral attack. All of these authorities relate to what the courts found to be irregularities in judicial sales which were not of such a character as to render the sales void within the strict meaning of that term. In none of these cases, so far as we are able to determine from a reading of the decisions, was there any question raised as to the authority of the court to dispose of the property, had the proper statutory steps been taken in the proceedings. The court in these cases had jurisdiction of the subject matter, to wit, the sale of the property in question. One of the principal law issues involved in the instant case is whether the Probate Court did have jurisdiction to make the order authorizing the administrator to dispose of the property under the terms set forth in the contract which he had entered into with the defendants; in other words, whether the court had the jurisdiction to make absolute the conditional contract entered into by the parties. The answer to these questions depends upon the actual character of the so-called order of sale in question. If the transaction was in fact a sale, then, without doubt, any attempt on our part to declare invalid the transaction would be an attack on the order of sale and unless other reasons existed for taking the case from the jury, it would be apparent that we were in error in so doing. We therefore proceed to consider the nature of the transaction and to inquire whether it falls within the jurisdiction of the Probate Court to sell the real estate of the decedent to pay debts, and in so doing we must keep in mind that the jurisdiction of the Probate Court in such proceedings is not inherent in that court as a part of its general jurisdiction in administering the property of deceased persons, but, on the other hand, it is the exercise of a special statutory power.

In the case of **Carr, Guardian, v Hull, 65 Oh St 394**, the Supreme Court of Ohio observes, in the opinon, p. 397:

"The exercise of the power is regulated by statute, and, being special in its character, must be strictly pursued."

In that case the court quotes with approval part of the opinion of the court in the case of Fitzgerald v Glancy, 49 Ill., 465, the following:

"This is the first case, within our knowledge, where debts have been created by an administrator after the death of his intestate, * * * and an order granted to sell his lands to pay them. They were not such claims, and cannot, by any legal alchemy, be made such, and not being such, the order to sell this lot to pay them, was erroneous and void. It has no legal basis to rest upon, and none whatever for the application in the first instance."

Although the Carr case, supra, was an error proceeding, we cite it merely to show that the power of the court to sell is a specific statutory power which must be strictly pursued, and that the statute conferring the power must be strictly construed. This is the general rule, as stated in 21 Am. Jur., p. 710, (citing Carr, Guardian, v. Hull, supra,):

"In the absence of a will, statutory enactments are the exclusive source of the power of an executor or administrator to sell real estate as well as of the jurisdiction of the probate court in reference to proceedings for such sale. In this connection, a court of probate exercises a special statutory power, and not one which pertains to the ordinary settlement of the estate, and it is frequently declared that the statute must be followed strictly in all material respects, or the sale will be held to be void. In other words, strict compliance with statutory prerequisites is deemed to be jurisdictional as regards both the person and the res, and it has been held that a court has no power to order the sale until the jurisdictional facts prescribed by law have been ascertained of record."

Although the word "sale" is sometimes employed in a broad sense to include a transaction in which the thing disposed of is paid for by some medium other than money, the strict meaning of the word is a transfer of title to property for a consideration in money, either in cash or deferred payment.

In the case of Williamson v Berry, 49 Howard (U. S.), p. 495, in the opinion at p. 544, we find the following statement:

" 'Sale' is a word of precise legal import, both at law and in

equity. It means at all times, a contract between parties to give and to pass rights of property for money, which the buyer pays or promises to pay to the seller for the thing bought and sold."

In the above case the New York Legislature passed a special act for the benefit of one Thomas Clark, making him trustee of certain devised property and authorizing him to sell or mortgage a part of it. with the assent of the chancellor. In that case, apparently the chancery court, looking to the ultimate benefit of the infants (See page 542 of opinion), ordered a direct conveyance to a creditor in payment of his debt. The United States Supreme Court, exercising an independent judgment and declaring itself not bound by the decisions of the State of New York which might sanction this procedure, since a local law only was involved, held that:

"The operation of every judgment depends upon the jurisdiction of the court to render it. Though there may be jurisdiction for certain purposes in a cause, that jurisdiction may be exceeded in the judgment. And whenever the right to property is claimed to have been changed under a judgment or decree by court, and is set up as a defense in another court, jurisdiction of the former may be inquired into." Opinion, p. 543.

At page 549 of the opinion the Court observes:

"We rule that the chancellor had authority under the acts to assent to sales and conveyances of the estate by the trustee, but not to any sale or conveyance on any other consideration than for cash paid on said conveyance."

In the case of Perrin v Megibben, 53 Fed. p. 86, the court in the opinion, at page 97 observes:

"A statutory authority to sell means a sale for money, either cash or on credit and not a barter or exchange."

In the case of **Taylor and Morgan v Galloway et, 1 Ohio, p. 232,** under the terms of a will, the executor was given certain powers, among which was the following: "all the rest of my estate I leave to be sold, as my executors hereafter named shall think best; and the moneys arising from such sale, I give unto my infant daughter, Susanna Eliza Green, to her and to her heirs forever." In construing this language the court held that the executor was not authorized to exchange or barter the lands of the decedent, but to sell them for money only.

The Taylor case was cited with approval in the case of **Fleischman v Shoemaker, 2 O. C. C., 152,** where the court stated:

"Power given by a will to executors to sell land, does not authorize an exchange or barter of lands, but a sale for money only."

In that case, the case of **Cleveland v The State Bank of Ohio, 16 Oh St, p. 236,** is referred to, wherein Judge Brinkerhoff had for consideration the construction of a power given by the General Assembly of Ohio to the city of Cleveland, the provisions of which power were as follows:

"To sell said shares or any part thereof, at such time or times as to them may seem expedient, for not less than their par value, 'and to do whatsoever else may seem necessary to secure and advance the interests of the city in the premises.' "

The court held that no authority was conferred upon the commissioners of the city of Cleveland to exchange shares, which they assumed to make. We quote the following excerpts from the opinion:

"Now, what was the contract which the commissioners of Cleveland assumed to make? It was not a sale for cash in hand, nor for money on terms of credit. It was nothing but an exchange, a swap, of the stock of the Cleveland, Painesville & Ashtabula Railroad, owned by the city of Cleveland, for a larger nominal amount of the stock of the Cleveland, Zanesville & Cincinnati Railroad—the latter guaranteeing that its stock, given in exchange, should, at a given period of time, be worth a certain sum of money in the market. * * * But the power to sell is one thing, and the power to barter and exchange is another and a very different thing. 'A sale of a chattel is an exchange thereof for money, but a sale is discriminated in many respects from an exchange in law—an exchange being the giving of one thing, and the receiving of another thing, while a sale is the giving of one thing for that which is the representative of all things." 1 Parsons on Contracts, 521. And the same distinction is asserted in Story on Sales, Sec. 1. And a power to sell does not authorize a barter or exchange. **Taylor v Galloway, 1 Ohio, 232.** * * * The commissioners of the city, then, had no power to make the contract of exchange which they assumed to make; and the powers of the commissioners being derived solely from a public legislative act, those who dealt with them, or who claim under them directly or remotely, were bound to take notice of the extent of those powers; and the city is not estopped to deny the existence of the power assumed. The contract of exchange is void for want of power in the commissioners to make it."

It is true that the cases just above cited do not relate to a construction of the special statutory powers granted to administrators or to the jurisdiction conferred upon Probate Courts in such statutes, but they do show the tendency of the Ohio courts to construe

230

the word "sale" as a transaction where title is passed for a money consideration only.

We have cited the above authorities to show that a "sale", as the word is ordinarily used, connotes a transaction in which a money consideration is to be paid for the thing disposed of. Certainly the term when strictly construed in accordance with the rule hereinbefore cited should not receive a broader construction.

Section 10510-2 GC, provides as follows:

"As soon as an executor or administrator ascertains that the personal property in his hands is insufficient to pay all the debts of the deceased, together with the allowance to the widow and children for twelve months and the costs of administering the estate, he shall commence a civil action in the probate court or the court of common pleas for authority to sell the decedent's real estate."

Section 10510-34 GC, provides as follows:

"When such bond is filed, and approved by court, it shall order the sale of the real estate included in the petition, or such part thereof as it deems necessary for the interest of all parties therein concerned, as hereinafter prescribed. If the petition alleges that it is necessary to sell part of the real estate, and that by such partial sale, the residue of the estate, or specific part or piece thereof, would be greatly injured, the court, if it so finds, may order a sale of the whole estate."

Section 10510-39 GC, provides as follows:

"Where the sale authorized by the court is private, the real estate shall not be sold for less than the appraised value; when the sale is at public auction, the real estate if improved shall not be sold for less than two-thirds of the appraised value, or if not improved, for less than one-half the appraised value. If, in private sales, after one bona fide effort to sell under the statute, no sale has been effected, or if in public sales land remains unsold for want of bidders when offered pursuant to advertisement, the court may fix the price for which such real estate may be sold, or may set aside the appraisement and order a new appraisement. If such new appraisement does not exceed $500.00, and upon the first offer thereunder at public sale there are no bids, then upon the motion of any party interested the court may order the real estate to be re-advertised and sold at public auction to the highest bidder."

Section 10510-40 GC, provides as follows:

"The order of sale shall prescribe the terms and conditions of the sale and payment of the purchase money, either in whole or in part for cash in hand or on deferred payments. In sales by executors or administrators, deferred payments shall not exceed two years, with interest."

**Section 10510-42, GC**, provides as follows:

"Such order shall require that before the delivery of such deed the deferred installments, if any, of the purchase money be secured by mortgage on the real estate sold, and mortgage note or notes bearing interest at the legal rate per annum payable annually But if after the sale is made and before delivery of such deed the purchaser offers to pay the full amount of the purchase money in cash, the court may order that it be accepted, if for the best interest of the estate or the ward, and direct its distribution."

**Section 10510-43, GC**, provides as follows:

"The court in such order may also direct the sale, without recourse, of any or all of the notes taken for deferred payments, if for the best interest of the estate or the ward, at not less than their face value with accrued interest, and direct the distribution of the proceeds."

All of the above quoted statutes were enacted by the same act of the Legislature, effective January 1, 1932, as a part of the new Probate Code. It is a well-established principle of statutory construction that statutes or sections which relate to the same person or thing or to the same class of persons or things, or the same subject or object, may be regarded as in pari materia. We quote from **37 O. Jur., page 602**:

"Under the rule that statutes or sections in pari materia are to be construed together, recourse may be had to the several sections or statutes for the purpose of arriving at a correct interpretation of any particular one. Accordingly, in interpreting an ambiguous statute, the entire legislation on the subject at the time is a matter competent for consideration. Indeed. if on the face of a statute there is doubt as to its meaning, and the doubt can be removed and the intent gathered by reference to cognate provisions, it is the duty of the courts to use them in aid of construction to learn and carry out the legislative intent. That is, a particular statute or section should be construed in the light of, with reference to, or in connection with, other statutes and sections,—especially where the provisions, though separated in the Code, were formerly part of but one section of an act or the same act."

We quote further from **37 O. Jur., p. 606**:

"An act under consideration should be construed in its entirety. That is to say, the entire act should be examined and considered, and considered as a whole. No provision or part thereof can properly be disregarded in hte construction of the statute. To the contrary, every part of the statute should be regarded in connection with the act of which it forms a part, so that all parts should be read to-

gether. The sense in which particular words, phrases, or clauses are used is to be ascertained from a view of the whole statute, rather than from isolated passages, except, perhaps, when such passages reach the entire subject matter of the controversy."

We quote also from **37 O. Jur., p. 617 et seq.**:
"It may be presumed to have been the intention of the legislature that all its enactments, which are not repealed, should be given effect, accordingly, all statutory provisions should be so construed, if possible. so as to give full force and effect to each and all of them, and not to abrogate, defeat or nullify one by the interpretation of another, where that can be done by a reasonable construction of both. Accordingly, a construction should be avoided, which would render a part of the statutory law inoperative, meaningless, nugatory, purposeless, unnecessary, or useless, unless such a construction is manifestly required."

If there be any ambiguity about the meaning of the word "sale" as employed in §§10510-2 and 10510-34, we must consider in pari materia the succeeding sections of the Code with reference to the same subject matter, to determine the intention of the Legislature in employing the word "sale". By so doing we find that a very definite meaning is disclosed, since by mandatory requirement of §10510-40 the sale must be for cash in hand, or on deferred payments, which deferred payments, if any, shall not exceed two years, with interest. Furthermore, §10510-42 requires that before delivery of the deed the deferred installments, if any, of the purchase money shall be secured by mortgage on the real estate sold, and mortgage note or notes bearing interest at the legal rate.

The next following section §10510-43, provides for the sale of notes taken for deferred payments. These statutes just referred to are part of the act having to do with the same subject matter, and they would be absolutely inoperative, meaningless, purposeless and useless should we construe the word "sale" as employed in the act. to include a transaction where any part of the consideration of the bid was other than cash in hand or in deferred payments.

All of the above considerations apply equally well to the general statute §10501-53, §8 of which gives jurisdiction to the probate court, "to authorize the sale of lands or equitable estates or interests therein, on petition by executors, administrators and guardians, and the assignments of inchoate dower in such cases of sale."

The want of jurisdiction of the Probate Court to make the order of sale in question is apparent upon the face of the record, and in arriving at our conclusions it has not been necessary for us to reconsider factual inquiries made by the Probate Court as a predicate to the order of sale.

Most of the authorities cited by plaintiffs had to do with steps in the proceedings to sell and in none of them, so far as we can deter-

mine, was any claim made that the order entered was not for the sale of the premises, but for some other manner of disposition not comprehended within the word "sale" as employed in the statute, but although we appreciate the diligent and thorough showing of the law as to collateral attack of judicial sales in Ohio as set forth in plaintiffs' brief and as presented in oral arguments, we are constrained to conclude that the authorities cited are not necessarily pertinent to the inquiry in the instant case, nor have we found in Ohio authorities in which the word "sale" as employed in the statute has been defined. We do find that the Ohio authorities recognize the principle that even though a court have jurisdiction of the subject matter concerning which its powers are invoked, its orders may be void because of lack of power to make them, and this want of power may be collaterally attacked. See **Wehrle v Wehrle, 39 Oh St 365; Marlean v Marlean, 9 Oh St 162; Russell v Bank, 102 Oh St 248; Thiessen v Moore, 105 Oh St 401.**

The general rule is stated in Freeman on Judgments, Fifth Edition, p. 735, as follows:

"It is well settled by the authorities that a judgment may be void for want of authority in a court to render the particular judgment rendered, though the court may have had jurisdiction over the subject matter and the parties. * * * In the actual rendition of the judgment, the court must remain within its jurisdiction and powers. For it is the power or authority behind a judgment, rather than the mere result reached, which determines its validity and immunity from collateral attack. A wrong decision made within the limits of the court's authority is error correctable on appeal or other direct review, but a wrong, or for that matter a correct, decision where the court in rendering it oversteps its jurisdiction and power is void and may be set aside either directly or collaterally. Such excess of authority or power is akin to a want of jurisdiction over the subject matter, the nature and requisites of which are treated in earlier sections of this chapter."

Other and additional quotations from Freeman on Judgments set forth in defendants' brief are equally cogent and pertinent to the issue here presented.

We also cite the following cases pertinent to the rule laid down by Freeman: Eberstein v Oswalt, 47 Mich. 254; Hewitt v Durant, 78 Mich. 186; The U. S. to the use of Wilson v Walker, 109 U. S. 258; Myer v Rousseau, 47 Ark. 460; Black v Dressell's Heirs, 20 Kas. 153; Bery v McClelland, 6 Gray (Mass.) 535; Moran v James, 45 N. Y. S. 537; Perrin v Megebbin, 53 Fed. 86.

Although we consider the issue as to the jurisdiction of the Probate Court and the question of collateral attack as the dominant questions involved in the instant case, certain arguments presented by the defendants are plausible and persuasive, and we are inclined to believe they operate as additional reasons justifying our action

in sustaining the motion of the defendants for a directed verdict. It is urged by defendants that the order of the Probate Court in question went beyond the pleadings in the case. The petition filed by the administrator prayed for sale of the real estate in question pursuant to the statutes of Ohio. Summons was issued upon this petition and service made upon a minor child who was a necessary party to the proceeding. An answer was filed by the guardian ad litem for the minor. After this service the administrator made a return to the Probate Court showing that the property had been sold for $20,000.00. Subsequently, another report was made which showed the transaction to be substantially that outlined in the contract originally entered into between the parties. It seems to be a general rule of law that judgments outside the issue or cause are void and subject to collateral attack. 15 R. C. L. p. 854, 855, Sec. 328; 1 Freeman on Judgments, 5th Ed. Sec. 335. p. 740, 741.

The above principle is also considered in certain Ohio cases.

In the case of **Rosebrough v Ansley et, 35 Oh St 107**, in which Judge McIlvaine wrote the opinion, an executor filed an action for money due on a note in the principal sum of $3315.00 with interest. The defendants waived the service of summons and filed their answer, admitting indebtedness on the note in the sum of $4227.26 with interest. Although the Supreme Court considered the matter in an error proceeding and therefore the question of collateral attack was not at issue, the court observed:

"The consent of the parties to such excessive judgment was as ineffectual to confer authority upon the court to render it, as if there had been no cause of action stated in the pleadings. Notwithstanding the written consent on file, it was the duty of the court to look into its record and ascertain whether the cause was one in which a judgment could be properly rendered, and to limit its judgment to and by the cause of action therein stated. * * * The court of common pleas had no power or authority to render judgment upon any other or different cause of action."

The case of **Miller Sons' Carriage Co. v The Jeptha G. Miller & Sons' Company, 21 O. C. C., 207**, was also an error proceeding in which an action had been commenced originally against the plaintiff in error to foreclose a second mortgage on a leasehold estate. It was averred that there was a claim and lien for $40,000.00 on the premises, prior to and better than the plaintiff's, and that the premises were not sufficient in value to discharge the lien and this mortgage. The property sold for $5000.00 and upon distribution the sheriff was ordered to pay to the treasurer of the county $347.96 in taxes, then a lien on the property, and to M. M. White, agent and trustee, $1714.12 being the ground rent under the terms of the lease. Neither the treasurer nor the trustee to whom the money was paid was a party to the suit. The court said:

"The court undoubtedly had jurisdiction of the defendant and of the subject matter, to wit, the proceeds of sale of the leasehold; but it is claimed that there was no statement of any claim in favor of the treasurer or M. M. White, trustee, and that an order for payment of such a claim is null and void."

The court then cites the case of **Spoors v Coen, 44 Oh St 497,** hereinafter referred to, and the case of Rosebrough v Ansley, et, supra. The court concluded:

"The fact that neither the treasurer nor M. M. White, trustee, were made parties to the suit is immaterial. Had the plaintiffs stated their interest in the property, and the court had so found, the defendant could not afterwards question it. The want of any statement or claim is the material omission."

The case was reversed because the judgment went beyond the pleadings.

The case of **Spoors v Coen, 44 Oh St 497,** is more pertinent to the issue here involved, since it involved a collateral attack in the Common Pleas Court on the judgment of the Probate Court. In that case the Probate Court had attempted to sell certain lands for the payment of the debts of an estate and had gone beyond its jurisdiction and had set aside an alleged fraudulent conveyance of the lands as a part of the proceedings to sell the property. Judge Minshall in the opinion, at some length, discusses the effect of an order of the court predicated upon a petition in which the facts are not pleaded warranting the order. At page 503 of the opinion he quotes, with approval, from the case of **Sheldon v Newton, 3 Oh St 494,** as follows:

"It is coram judice whenever a case is presented that brings this power into action. * * * Before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal to answer the charge therein contained."

Judge Minshall further observes:

"A judgment rendered where no case has been stated is as much a judgment upon a case coram non judice, whatever may be the jurisdiction of the court rendering it, as a judgment upon a case however perfectly stated, before a court not qualified with jurisdiction to hear and determine."

Still another point is raised by defendants which we deem worthy of consideration, and that is, that the contract in question which appears upon its face to be in violation of statutory require-

ments regarding decedent's real estate, was void from the beginning.

In this connection **The Massillon Savings & Loan Co. v The Imperial Finance Co., 114 Oh St 523**, is cited. In that case apparently there was a contract in the nature of sale of a membership fee. After the execution of the contract the Legislature enacted a law prohibiting the sale of memberships for a fee or compensation. There was an attempt to enforce the contract, and the court held:

"Where a contract is legal when made, and subsequently such contract or its performance is prohibited by statute, performance thereof after the time when such prohibitive law becomes effective is illegal, and neither party can recover for breach of the contract."

In view of the fact that the court there was dealing with a statute forbidding a certain course of conduct, we doubt its application to the instant case. However, we are more impressed by the authorities cited by defendants to the effect that a contract by an administrator or an executor to convey lands of his decedent when an order for that purpose could be obtained, is void and against public policy.

In the case of Herrick v Grow, 5 Wendell, 580, an action was brought on a contract by one to whom the administrators had agreed to sell "as soon as they could obtain a sale of the same under an order of the surrogate". An order of sale was obtained and administrators refused to convey. Upon demurrer to the declaration, although under the New York law an administrator could sell only at a public sale, the demurrer was sustained in a collateral proceeding. The court in the opinion refers to the duty of administrators to sell at the highest price, and states that such a contract is highly improper and a violation of the duty of the administrators, contrary to the policy of the statute and void.

In the instant case the acceptance of encumbered real estate under the contract was not only against the policy of the statute, but contrary to the specific provisions thereof. Under his duty to the estate had a higher offer been made to the administrator between the time of the execution of the contract and the order of sale, it would have been his duty to report the same and the court could not have approved it. Under these circumstances there would be no mutuality under the contract which would make it enforceable.

In The Overseers of the Poor of Bridgewater v The Overseers of the Poor of Brookfield, 3 Cowan., 299, after the sale had been completed under a contract by an administrator to sell when a surrogate's order could be procured, the order was procured and conveyance made. The court in a collateral proceeding held the conveyance void as against public policy and upon the further ground that the administrator had no interest sufficient to warrant a contract by him to convey prior to the securing of an order of sale, and that he had no control over the lands of the estate until the order of sale was entered.

It is further contended by the defendants that no question of collateral attack can be involved in the instant case for the reason that a Probate Court set aside the order of sale to the defendants and issued a new order for a re-sale. We can not agree with defendants upon this theory of the case, since whatever rights the administrator had to make the claim against the defendants became vested while the order was in effect and before it was set aside, and the rights of the parties would be determined under the status which existed prior to the setting aside of the order of sale. That a void sale may be set aside in a collateral proceeding even after confirmation is supported by the following quotation from 21 Am. Jur., p. 738:

"An order approving an administration sale cannot, by any retroactive effect, impart validity to a void sale. Such a sale may be attacked collaterally, notwithstanding its confirmation.

"The most serious objection going to the validity of the sale, of course, is lack of jurisdiction. The probate court can effectively confirm those sales only that are made under orders which it had jurisdiction to make, and the bid of a purchaser at a sale void for want of jurisdiction to order the sale has been held to be without consideration and hence unenforceable, although confirmed."

We also quote from 21 Am. Jur., p. 738:

"In a proper case the purchaser himself may voluntarily rescind a void sale, thereby avoiding the necessity of the bringing of proceedings against him to have it declared void."

For the reasons above stated, and particularly for the reason that in our opinion the order of sale in the instant case was beyond the jurisdiction of the Probate Court conferred upon it by the statute, we adhere to our original oral decision dismissing the case. The motion for new trial will, therefore, be overruled. Exceptions.